Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300

Dan G. Boyle
**BOIES SCHILLER FLEXNER LLP**
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732

*Counsel to Cosimo Borrelli in his capacity as the sole director of each of the Borrelli Debtors*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of:<br><br>PRINCE GLOBAL HOLDINGS LIMITED et al.,<br><br>Debtors in Foreign Proceedings.[1] | Chapter 15<br>Case No. 26-10769 (MG)<br>(Jointly Administered) |
| COSIMO BORRELLI,<br><br>Appellant,<br><br>v.<br><br>PAUL PRETLOVE, DAVID STANDISH, and JAMES DRURY,<br><br>Appellees. | Bankruptcy Appeal<br>Case No. 1:26-cv-05279-VEC |

**APPELLANT COSIMO BORRELLI'S OPPOSITION TO**
**APPELLEES' MOTION TO DISMISS AND STAY PROCEEDINGS**

[1] The Debtors in these Chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at Docket Entry 2-1 in *In re Prince Global Holdings Limited, et al.*, Case No. 26-bk-10769 (MG) (Bankr. S.D.N.Y.). Notwithstanding the case caption, Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, disputes that each of these entities is the subject of a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

A. The JPLs are Appointed at the Request of the BVI AG ..... 2

B. Borrelli is Appointed Sole Director and Directs Debtor Opposition to the JPLs ..... 3

C. The JPLs Commence Chapter 15 Proceedings Over Debtor Objections ..... 4

D. The Recognition Hearing ..... 5

ARGUMENT ..... 6

I. Borrelli has Bankruptcy Appellate and Constitutional Standing ..... 6

II. Borrelli Is the Sole Director of the Borrelli Debtors ..... 9

III. The BVI Orders Did Not Displace Borrelli's Authority to Oppose Recognition ..... 12

IV. The Court Should Not Stay Merits Briefing ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Collins v. Oilsands Quest, Inc.*,
484 B.R. 593 (S.D.N.Y. 2012) ........ 11

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ........ 11

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ........ passim

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ........ 8

*In re E. C. Ernst, Inc.*,
2 B.R. 757 (Bankr. S.D.N.Y. 1980) ........ 8

*In re Fairfield Sentry Ltd.*,
714 F.3d 127 (2d Cir 2013) ........ 8

*In re Qimonda AG Bankr. Litig.*,
433 B.R. 547 (E.D. Va. 2010) ........ 12

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ........ 8

*Re "C" (a Minor)*
[1985] EWCA (Civ), 1985 WL 1167749 (Eng.) ........ 13

*Renois v. WVMF Funding, LLC*,
2021 WL 1721818 (S.D.N.Y. Apr. 30, 2021) ........ 15

*Republic of Ecuador v. Chevron Corp.*,
638 F.3d 384 (2d Cir. 2011) ........ 11

*Spencer McGuiness v. Mawer*
[2024] EWHC (Ch) 3694 [51] (Eng.) ........ 13

*Ware Bey v. Adams*,
2026 WL 1714076 (S.D.N.Y. June 12, 2026) ........ 15

*Zoya v. Ahmed*
[2016] EWHC 1981 (Ch) ........ 11

**Statutes**

11 U.S.C. § 1521 ........ 7

Appellant Cosimo Borrelli respectfully submits this opposition to Appellees' Motion to Dismiss and Stay Proceedings (the "Motion"). [ECF 19, 19-1].

## PRELIMINARY STATEMENT

In January 2026, the Attorney General of the British Virgin Islands (the "BVI AG") applied *ex parte* to liquidate 30 BVI-registered corporations and place them under the control of joint provisional liquidators ("JPLs") pending final liquidation. It was a novel application—in fact, the first of its kind in the BVI. That is because none of the companies were insolvent, and the proceedings would protect no existing creditors. Rather, relying solely on unsubstantiated allegations made by United States criminal and regulatory authorities against a businessman who controlled 23 of the companies, the BVI AG sought to liquidate the companies on public interest and equitable grounds. Not surprisingly, the application sparked litigation, in the BVI and around the world. This Motion concerns a small slice—whether Cosimo Borrelli, the sole director of 25 of the companies ("Borrelli Debtors")—has standing to appeal a Bankruptcy Court order granting chapter 15 recognition to the BVI provisional proceedings.

The answer is yes. The Bankruptcy Court granted discretionary relief to the JPLs, including broad discovery powers. Because Borrelli is subject to that discovery order, he is a "person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court," which is the test in the Second Circuit for determining bankruptcy appellate standing. *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (citation omitted). And while there are other aspects of the recognition order that likewise give rise to bankruptcy standing, such as novel injunctive relief barring Borrelli from acting on behalf of entities with names similar to the Borrelli Debtors, the discovery order is enough on its own under *Barnet*. Once there is bankruptcy appellate

standing, the analysis ends, because the pecuniary interest test is "stricter than Article III's 'injury in fact' test." *Id.* at 242 (citation omitted).

The JPLs' remaining arguments do not change this result. There is ample evidence that Borrelli is a director, including a detailed affidavit, the appointment documents, and deposition testimony explaining the circumstances of his appointment and how he confirmed its validity. The JPLs have also abandoned any challenge to Borrelli's authority before the BVI Court—the proper venue to address issues of BVI corporate law—and should be estopped from raising it here. Further, the JPLs' claim that the BVI Court displaced Borrelli's authority is simply wrong because they rely on penal notices that have no effect under BVI law and are contradicted by the orders themselves. Were it otherwise, the BVI Court would not continue to acknowledge Borrelli as the sole director (as it has) or let him continue directing the Borrelli Debtors' opposition to the JPLs in the BVI (as it is doing).

## BACKGROUND[2]

### A. The JPLs are Appointed at the Request of the BVI AG

On January 5, 2026, the BVI AG filed *ex parte* applications in the High Court of Justice, Commercial Division, of the British Virgin Islands (the "BVI Court") seeking appointment of liquidators over 30 companies on the grounds that doing so was "just and equitable" and in the public interest. [ECF 49-10]; [ECF 49-11 ¶ 28]. The companies were not insolvent. Rather, the BVI AG based her applications on ongoing criminal and civil forfeiture proceedings in the United States against one of the owners of some of the companies, Chen Zhi, and on sanctions issued against Chen and certain of the companies.[3] The BVI Applications included no evidence and none

[2] Citations to ECF numbers are to the docket in *In re Prince Glob. Holdings, Inc.*, No. 26-10769 (Bankr. S.D.N.Y.), as designated by the parties for the record in this appeal.

[3] Many of the U.S. government's allegations are demonstrably wrong and cause for healthy skepticism of the way it conducted its investigation and brought its case. The details go beyond the applicable word limit, but they have

has been supplied since. [ECF 49-14 at 10:13–16]. This is the first time the BVI AG has exercised its authority to seek liquidation on public interest grounds. [ECF 49-14 at 5:23–6:5]; [ECF 49-17 at 237:21–238:9].

On January 9, 2026, following an *ex parte* hearing, the BVI Court issued 25 orders appointing the JPLs over each of the companies on a temporary, provisional basis ("Appointment Orders"). [ECF 49-18 ¶¶ 1–2]. The JPLs were given investigatory duties and charged with maintaining the status quo by identifying and preserving assets pending a determination of whether the companies would be liquidated. *Id.* ¶ 3(a)–(b), (i), (n); [ECF 49-1 ¶ 64]; [ECF 49-17 at 221:22–222:2].

**B. Borrelli is Appointed Sole Director and Directs Debtor Opposition to the JPLs**

On January 6, 2026, Chen, a Chinese national who previously held Cambodian citizenship, was sent from Cambodia to China, where he has been detained with no contact with his outside lawyers. [ECF 49-2 ¶ 8]. Prior to his rendition to China, Chen had given a full power of attorney to professionals within his business. *Id.* ¶ 9.

In February 2026, Borrelli was appointed as the sole director of 25 of the 30 companies that were subject to the Appointment Orders. Borrelli exercised his residuary power as director and directed the Borrelli Debtors to retain counsel and oppose the BVI liquidation proceedings, as BVI law permits. [ECF 49-20 ¶ 36] (asking BVI Court to "discharge the provisional liquidators"); [ECF 49-34 at 144:24–146:2] (testimony of JPLs' expert that directors retain "inherent and longstanding power" to oppose the JPLs' appointment and seek their discharge).

been addressed elsewhere in this case. [ECF 49-5 at 15–17]; [ECF 68 at 6–12]. The BVI Court, which has not yet ruled on the BVI AG's final liquidation applications, has been troubled by these shortcomings. *See* [ECF 49-7 at 6:9–13] (BVI COURT: "I am very concerned, very concerned to note that apparently once again . . . US attorneys seem to think they need to embellish the record.").

### C. The JPLs Commence Chapter 15 Proceedings Over Debtor Objections

On April 8, 2026, the JPLs commenced chapter 15 cases seeking recognition of the BVI proceedings and provisional relief for the JPLs. [ECF 1, 2]. On April 16, the Borrelli Debtors objected. [ECF 17 ¶¶ 18–21]. After an 80-minute hearing with no witness testimony or cross examination, the Bankruptcy Court granted the JPLs' emergency relief. At the hearing, the court made clear it had decided issues the parties had not yet fully developed—chiefly, the question of whether a foreign government's investigatory proceeding into solvent companies with no debt or creditors qualified as an insolvency proceeding under bankruptcy law. *See, e.g.*, [ECF 43 at 34:7–17]. The Bankruptcy Court subsequently issued an opinion granting provisional relief. [ECF 38, 44].

At the provisional relief hearing, the JPLs questioned Borrelli's authority to speak for the Debtors. The Bankruptcy Court found this was a BVI law question best addressed by the BVI Court. [ECF 43 at 7:24–8:6; 8:20–21]. The issue was presented to the BVI Court, where the JPLs asserted they "do not oppose . . . the directors appearing and objecting to the petition to the extent permissible under US law. What the JPLs oppose is the opposition *purporting to come from the [Debtors] themselves*." [ECF 49-37 ¶ 19]. The BVI Court ruled that directors' residual powers do not extend to causing the companies to oppose recognition in foreign proceedings. [ECF 49-21 at 210:9–21]. But that limitation did not bar Borrelli from objecting in his own name. It only barred him from *directing the companies* to object. *See id.* at 208:13–18 ("[T]he directors do not have the power to go in and oppose the recognition proceedings in the US if it is that they are doing so on behalf of the company."). Indeed, the BVI Court relied on the JPLs' acknowledgment that Borrelli could still take such action in his capacity as a director. *Id*. at 207:10–15 ("And as [the JPLs' counsel] has pointed out, the JPLs have got no problem with the directors as individuals or some

other kind of interest, or maybe shareholders, going after the US Court and explaining why the recognition should not be granted.").

### D. The Recognition Hearing

On May 21, 2026, Borrelli objected to the Chapter 15 proceedings in his own name and in his capacity as a director. [ECF 68]. The Borrelli Debtors did not file objections.

On June 1, 2026, the JPLs filed a new proposed recognition order seeking expanded discretionary relief. [ECF 71-1, 71-2]. Borrelli requested an adjournment of the June 9 recognition hearing because the new order was filed after the objection date and too close to the hearing. [ECF 106-2]. The Bankruptcy Court denied that request. [ECF 73].

At the recognition hearing, the Bankruptcy Court ruled after approximately 90 minutes, stating that "it should be no secret that [it was] going to recognize the BVI proceeding[s]." [ECF 85 at 76:23–25]. It then gave Borrelli three days to brief the JPLs' demand for expanded discretionary relief. *See id.* at 76:19–21. Two days later, and before receiving that briefing, the Bankruptcy Court issued its recognition opinion. [ECF 82]. A week later, the court entered another order ("Recognition Order") granting substantially all the discretionary relief the JPLs had requested, including:

(1) broad authority to take discovery without going back to the court for specific requests; and

(2) an injunction barring Borrelli from speaking in the name of or on behalf of the 25 companies he directs, or any of their "controlled subsidiaries or any similar general name or designation that does not clearly refer to a specific legal entity or natural person."

[ECF 90 ¶¶ 19, 21].

The JPLs have used this Recognition Order against Borrelli and his lawyers across the globe. In the United States, the JPLs are using the Recognition Order to pursue broad discovery

from Borrelli's attorneys. Declaration of Peter M. Skinner, dated August 28, 2026 ("Skinner Decl.") Ex. 6. In Hong Kong, the JPLs have asserted that the Recognition Order bars Borrelli from taking certain legal actions. *See id.* Ex. 4 at 1. And in the United Kingdom, the JPLs have taken the position that Borrelli has "no role to play" in the U.K. recognition proceedings and have cited portions of the Recognition Order holding that Borrelli lacked standing in the U.S. to object to recognition. *See id.* Ex. 5 ¶ 4, Ex. 3 ¶ 116.

## ARGUMENT

### I. Borrelli has Bankruptcy Appellate and Constitutional Standing

Borrelli meets the "person aggrieved" standard for bankruptcy appellate standing because the Recognition Order authorizes discovery directly from Borrelli and the JPLs are using that order to demand documents from his attorneys. Borrelli is also further "aggrieved" by the discretionary injunctive relief granted by the Bankruptcy Court and that court's finding that he lacks standing—a ruling that impacts only Borrelli and no one else.

As the Second Circuit explained in *In re Barnet*, "our precedents establish that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." 737 F.3d at 242 (internal quotation omitted). There, the Circuit held that an appellant satisfied the standard because, like Borrelli, it was subject to discovery from a foreign representative following entry of a chapter 15 recognition order.

*Barnet* presented "an unusual jurisdictional thicket." *Id.* at 241. The foreign representatives of an Australian insolvency proceeding had filed a petition seeking chapter 15 recognition. *Id.* After the bankruptcy court entered a recognition order, and a debtor affiliate called Drawbridge

appealed that order, the representatives "filed a motion seeking discovery from Drawbridge and other parties."[4] *Id.* The bankruptcy court granted the foreign representative's discovery motion. *Id.*

In considering Drawbridge's appeal, the Circuit found that Drawbridge "lacks appellate standing because Drawbridge [was] not aggrieved by the Recognition Order." *Id.* The court nonetheless considered the appeal because the "discovery order cured the jurisdictional infirmity." *Id.* at 242. The court reasoned that discovery orders in chapter 15 proceedings are "immediately appealable" because, "like Section 1782 proceedings, [they] are ancillary to a suit in another tribunal, such that there will never be a final resolution on the merits beyond the discovery relief itself." *Id.* at 244 (internal quotation omitted). Drawbridge was thus "aggrieved by an order of the Bankruptcy Court—the discovery order." *Id.* at 243. Moreover, an "appeal from the discovery order would bring up for review the Recognition Order" because "[s]uch an appeal, as with an appeal from any other final order, opens the record and permits review of all rulings that led up to the judgment." *Id.* at 246 (internal quotation omitted).

This case presents the same situation, it is just procedurally simpler. Here, the JPLs sought recognition and discovery powers in the same motion, rather than in two separate motions. Borrelli objected to both. [ECF 68]; [ECF 84 ¶¶ 13–19]. The Bankruptcy Court granted both. [ECF 90 ¶¶ 13–15, 19]; [ECF 82, 89]. And Borrelli appealed both. [ECF 91 at 2].

Borrelli is thus "aggrieved" here for same reason Drawbridge was aggrieved in *Barnet*—because he is subject to discovery granted to a foreign representative in a chapter 15 proceeding. [ECF 90 ¶ 19]; *Barnet*, 737 F.3d at 243 (appellant "aggrieved" by order authorizing discovery where discovery had not yet been sought). Moreover, discovery here is not hypothetical, as the

[4] Chapter 15 foreign representatives are not authorized to issue discovery requests until that authority is granted by a court. 11 U.S.C. § 1521(a)(4).

JPLs have subpoenaed Borrelli's lawyers under the Recognition Order seeking a broad range of documents related to Borrelli and others. Skinner Decl. Ex. 6.

Borrelli is also aggrieved by the Recognition Order's injunctive relief, which purports to bar him from taking actions globally "in the name or on behalf of" any of the Debtors, their non-Debtor controlled subsidiaries, or "any similar general name or designation that does not clearly refer to a specific legal entity or natural person," without permission from the JPLs or the BVI Court. [ECF 90 ¶ 21]. The JPLs have already pointed to that order in arguing that Borrelli is barred from participating in other foreign recognition proceedings. *See* Skinner Decl. Ex. 4 at 2. Chapter 15 orders halting litigation or enjoining parties from participating in court proceedings are appealable by those parties. *See In re Fairfield Sentry Ltd.*, 714 F.3d 127, 129–30 (2d Cir. 2013) (plaintiff in action stayed by section 1520 had standing to appeal recognition); *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 420 (2d Cir. 2005) (party prevented from litigating by order granting comity to foreign insolvency proceeding had standing to appeal that order).

And Borrelli is still further aggrieved by the Bankruptcy Court's decision that he lacks standing to participate in the chapter 15 proceedings. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) ("Persons aggrieved must show the order of the bankruptcy court diminishes their property, increases their burdens, *or impairs their rights*." (citation modified) (citation omitted) (emphasis added)); *In re E. C. Ernst, Inc.*, 2 B.R. 757, 760 (Bankr. S.D.N.Y. 1980) (same). Those proceedings are ongoing, and Borrelli wishes to participate in them. But the Bankruptcy Court has held he does not have standing to do so, and only Borrelli can appeal that determination.

The JPLs contend that none of these grievances count, because Borrelli has no personal, "pecuniary" interest in the outcome. Mot. at 14–15. But Borrelli's remuneration is irrelevant,

because *Barnet* makes clear monetary harm is not the sole basis for bankruptcy appellate standing. Rather, it is enough if the appellant "is aggrieved by an order of the Bankruptcy Court." *Barnet*, 737 F.3d at 243. Here, Borrelli is aggrieved by the discovery order, the global injunctive relief, and the ruling that he does not have standing.

Further, the same injuries that give Borrelli bankruptcy appellate standing also confer constitutional standing, because the former is "stricter" than the latter. *Id.* at 242. The harms are both actual (the subpoena to his agents and the proscriptive injunctive relief) and imminent (discovery that will be directed to Borrelli). *Barnet* thus forecloses the JPLs' claim that Borrelli has not identified any personal injury supporting Article III standing—if he has bankruptcy appellate standing, which he does under controlling Second Circuit precedent, he also has constitutional standing.

## II. Borrelli Is the Sole Director of the Borrelli Debtors

Borrelli's appointment as the sole director of the Borrelli Debtors is not a "bare assertion" that Borrelli "refused" to "corroborat[e]." Mot. at 11.

The evidence before the Bankruptcy Court of Borrelli's appointment included his sworn affidavit, [ECF 49-2], the corporate resolutions memorializing his appointment, [ECF 31-2 at 10–179], and his deposition testimony, [ECF 77-1]. In his affidavit, Borrelli explained that because Chen was detained in China at the time of his appointment, the appointments for certain of the Chen-controlled Debtors were made by attorneys-in-fact to whom Chen had granted full powers of attorney before his detention. [ECF 49-2 at ¶¶ 8–9]. Borrelli testified that they "wish to remain anonymous and I have (reasonably) committed to respect those wishes" because the "Chinese authorities have made threats against parties associated with Mr Chen." *Id.* ¶ 8. Borrelli further

swore, "I have seen and verified all of the relevant documentation and am satisfied that those appointing me had power to do so." *Id.* ¶ 10.

Except for Noble Title Limited, the corporate resolutions are substantially identical: the sole member of the company removed all existing directors and appointed Borrelli as an additional director, thus rendering Borrelli the sole director of the company. *See, e.g.*, [ECF 31-2 at 10–179].[5] For nineteen of those companies, the signature and name of the attorney-in-fact was redacted; the signatories for the remaining five were not redacted. *Id.* Noble Title was signed by that company's sole director rather than sole member, and that signatory's name was not redacted. *Id.* at 78–84.

At his deposition, when asked why he was satisfied that those appointing him had the power to do so, Borrelli testified: "Because I have seen and I have verified all the relevant documentation." [ECF 77-1 at 41:4–7]. When asked what documentation he had reviewed, Borrelli responded, "I reviewed the power of attorney and other documents I think that were also registers of members if I remember correctly." *Id.* at 41:9–14. He further testified that he was "familiar with Chen Zhi's signature" and "I think I'm able to recognize it." *Id.* at 41:16–23.

To review, Borrelli swore that he had examined the appointment documents, those documents were submitted to the Bankruptcy Court, and he testified that he was satisfied the attorneys-in-fact who signed on Chen's behalf were authorized to do so because he had reviewed the power of attorney and he recognized Chen's signature. This is not, as the JPLs incorrectly claim, a "bare assertion" of standing. Mot. at 11.

---

[5] As Borrelli explained at his deposition, additional steps were required to remove the directors for six of the companies. [ECF 77-1 at 120:13–122:4]. When asked if those steps had been completed, he testified "Yes. I think they've all been completed, but I can't be sure," *see id.*, which is apparently the JPLs' basis for claiming Borrelli is "is unaware as to whether he is in fact the sole director of six of the Borrelli Debtors," Mot. at 11. This is a distraction. Borrelli's testimony is enough to establish by a preponderance that he is the sole director, as has been accepted by the BVI Court. *See infra* at 12.

The JPLs are likewise incorrect that Borrelli refused to provide corroboration. At the recognition hearing, counsel for Borrelli offered to produce the unredacted shareholder resolutions as well as the power of attorney pursuant to a protective order. [ECF 85 at 45:19–46:1, 47:16–23, 63:7–64:4, 65:8–13]. Before the hearing concluded, the Court instructed the parties to confer on such order. *Id.* at 81:12–18, 82:8–9. The next day, on June 10, Borrelli sent the JPLs a proposed order. But on June 11, the Court entered an order granting recognition and holding that Borrelli "**LACKS** standing" without waiting for further evidence. [ECF 82 at 33]. The JPLs did not respond to the proposed protective order until June 18, the same date the Court entered its final order and Borrelli filed his appeal. At that point, there was nothing to discuss.[6]

Lastly, the BVI Court—the proper court to address issues of BVI corporate law—has recognized that Borrelli was properly appointed as a director, at least implicitly. Unlike here, the JPLs do not argue in the BVI that Borrelli has failed to substantiate his appointment.[7] Nor could they, as it is their burden under BVI law to adduce evidence of Borrelli's lack of authority, which they have not done. *Zoya v. Ahmed* [2016] EWHC 1981 (Ch) ("67. The solicitors who issue process in the name of a company warrant that they are authorised to do so, and the court proceeds on that

---

[6] The Bankruptcy Court ruled before the record could be supplemented with the further evidence contemplated at the hearing and the record is now closed. As explained above, there is ample evidence in that record establishing Borrelli's appointment, and the JPLs provided no evidence to the contrary. But if this Court determines further evidence of Borrelli's appointment is needed, it can remand for further fact-finding in the Bankruptcy Court.

[7] To be clear, the JPLs questioned Borrelli's appointment before the BVI Court once, arguing that the court should determine whether Borrelli has authority given the Borrelli Debtors' purported failure to provide "sufficient evidence" of his appointment. Skinner Decl. Ex. 1 ¶ 16. But the Borrelli Debtors pointed out that it was up to the JPLs to adduce evidence that Borrelli did not have authority to direct the Borrelli Debtors, which they had not done. *See id.* Ex. 2 ¶ 19.2]. The JPLs then withdrew their argument. [ECF 49-37 ¶ 6]. Withdrawing the argument there only to resurface it here is precisely the kind of "strategic conduct" and multi-forum "gamesmanship" that chapter 15 law prohibits. *See Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012) (cautioning against encouraging strategic conduct in cross-border insolvency); *In re Atlas Shipping A/S*, 404 B.R. 726, 745 (Bankr. S.D.N.Y. 2009) (declining to "countenance . . . blatant gamesmanship" where litigant sought to play Danish and U.S. courts to its advantage). And under principles of judicial estoppel, they should be barred from raising that same argument here. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011) (judicial estoppel protects "integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" (internal citation omitted)).

basis unless the contrary is shown to be the case.”). The BVI Court has treated Borrelli’s appointment as valid throughout. [ECF 49-21] (hearing arguments from Borrelli’s counsel); [ECF 92-1] (adjudicating application filed by the Borrelli Debtors, as directed by Borrelli). As has the BVI Attorney General. [ECF 49-14 at 88:18–89:2] (counsel to the BVI AG acknowledging that Borrelli was the sole director). As have, for that matter, the JPLs’ attorneys in the BVI. Skinner Decl. Ex. 4 (correspondence in which JPLs’ counsel asserts that Borrelli, as a director, is bound by the order limiting actions of directors abroad). It is only here that the JPLs question the validity of Borrelli’s appointment. For all of the reasons noted above, the Court should reject that meritless argument.

## III. The BVI Orders Did Not Displace Borrelli’s Authority to Oppose Recognition

The JPLs maintain that penal notices appended to the Appointment Orders provide that the JPLs “replaced” the Borrelli Debtors’ directors. But under BVI law, the penal notices are not part of the orders and cannot be used to construe them. And the Appointment Orders further make clear that the JPLs did not replace the directors; rather, the directors remain with certain residuary powers. The Bankruptcy Court thus erred in relying on the penal notices in finding that “the BVI Orders displaced any authority the Director had to object to this proceeding.” [ECF 82 at 32].[8]

The BVI Orders did not remove the Debtors’ directors. Rather, they granted the JPLs certain powers, [ECF 49-18 ¶¶ 2–3], to the exclusion of the Debtors’ existing directors exercising those same powers, *id.* ¶ 9. The Appointment Orders thus provide that the JPLs displace certain director powers; the Debtors’ directors otherwise remain in place with authority to act on behalf of the Debtors.

[8] The Bankruptcy Court’s interpretation of the Appointment Orders is a question of foreign law subject to *de novo* review. *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 565 n.28 (E.D. Va. 2010).

The parties' BVI law experts agree. As Borrelli's expert explained: "Neither statute nor the [Appointment Orders] cause [the JPLs] to "*replace*" a director or office holder, though certain of the powers previously exercisable by the directors and officers are now exercisable only by the JPLs." [ECF 49-1 ¶ 47]. When asked if the directors "still exist as directors," the JPLs' expert concurred: "The appointment of provisional liquidators does not change who is named on the register of directors. It does change their powers." [ECF 49-34 at 18:4–10].

The Bankruptcy Court derived its mistaken notion of director "replacement" from the penal notice attached to the Appointment Orders. [ECF 82 at 32]. Penal notices are placed on an order "at the request of the party who may seek to enforce the order." [ECF 49-1 ¶ 44]. But they are "not part of the order, and cannot be used to construe it." *Re "C" (a Minor)* [1985] EWCA (Civ), 1985 WL 1167749 (Eng.); *see also Spencer McGuiness v. Mawer* [2024] EWHC (Ch) 3694 [51] (Eng.) ("[A] penal notice is not part of the order."). As Borrelli's expert succinctly explained: "This invocation of a penal notice to interpret the operative terms of the order is wrong as a matter of BVI law." [ECF 49-1 ¶ 43].

Furthermore, even if the Bankruptcy Court had interpreted the Appointment Orders correctly, those orders cannot bar Borrelli from appealing recognition. A chapter 15 court cannot deny a litigant standing to oppose recognition of a foreign-law order based on that foreign order's contents. Those contents *have* no U.S. law effect *until* the order is recognized: that is what "recognition" means. The Bankruptcy Court put the cart before the horse in finding that the Appointment Orders barred bar Borrelli from opposing their recognition.

The Bankruptcy Court also erred in reasoning that, because "the BVI Court has explicitly found that directors do not have the authority to object before this Court," Borrelli "does not appear to have the authority to appear on behalf of the Debtors, and his claim that his right to operate the

Debtors is infringed upon by the Chapter 15 Cases is inapposite." [ECF 82 at 32–33]. But what the BVI Court held was that "[t]he directors of each of the Companies do not have authority *in the name of such Company* to oppose or interfere with . . . the JPLs' powers . . . to seek recognition (or its equivalent) of [their] appointment in the United States." [ECF 92-1 ¶¶ 1, 2(c)] (emphasis added). The BVI Court therefore limited what Borrelli can do on behalf of the companies; it did not bar him from appearing in his own capacity. And the BVI Court relied on the JPLs' representation that they were not seeking to limit Borrelli's actions in his individual capacity. [ECF 49-21 at 207:10–15].

That is what happened here. Borrelli did not cause the companies to appear; he appeared himself because the Recognition Order impairs his authority as director. *See* [ECF 68 at 1, ¶ 30]. This was permitted by the BVI Court. [ECF 49-21 at 208:16–18] (the Debtors' directors may appear in the United States as themselves, but "they can't do it on behalf of and in the name of the [Debtors]"). The JPLs' claim that he cannot appear as a director because the BVI Orders "prevent him from using that office to put the Debtors in opposition to Chapter 15 recognition." Mot. at 13. But this misunderstands Borrelli's appearance. He is not directing the Borrelli Debtors to take action; he is acting in his own capacity as a director. And he clearly has his own rights at stake, as demonstrated by the Recognition Order's injunction barring him globally from speaking in the name of the Borrelli Debtors, [ECF 90 ¶ 21], and the JPLs' use of the Recognition Order to compel documents from his attorneys, Skinner Decl. Ex. 6.

The JPLs would have this Court believe they are the same as the Debtors; that because they oppose this appeal, the Debtors oppose this appeal; and that Borrelli does not have standing to appeal as a result. Mot. at 15. This is wrong on multiple levels. First, the JPLs are not the Debtors. They are provisional liquidators with temporary authority to administer the Debtors' affairs

pending resolution of the BVI AG's liquidation application. [ECF 49-18]. Second, the *Debtors* do not oppose this appeal, the *JPLs* oppose this appeal. The JPLs are not synonymous with the Debtors or even aligned with them. They are adverse: the Borelli Debtors have been litigating against the JPLs in the BVI since January, arguing that the JPLs' should not have been appointed. [ECF 49-20]. Borrelli therefore is not, as the JPLs wrongly put it, challenging a bankruptcy order "based on the rights of third parties"—the Debtors—who, "in fact, favor the order." Mot. at 15 (quotation marks omitted).

## IV. The Court Should Not Stay Merits Briefing

The Court should not handle this appeal piecemeal and delay the merits while the JPLs' Motion is resolved. Appellate courts routinely resolve standing issues alongside merits issues. And as the JPLs' own cases make clear, where stays are granted in the interests of justice, it is typically where a dispositive motion may alleviate burdensome discovery, which is not a consideration here. *Ware Bey v. Adams*, 2026 WL 1714076, at *1 (S.D.N.Y. June 12, 2026); *Renois v. WVMF Funding, LLC*, 2021 WL 1721818, at *2 (S.D.N.Y. Apr. 30, 2021). The JPLs claim they should not have to bear the expense of merits briefing, but it is the JPLs who are creating extra expense by adding a round of briefing when the standing issues could have been resolved as part of the briefing already ordered by the Court. In contrast, Borrelli will be prejudiced by a delay, as the JPLs are using the powers granted under the Recognition Order—including by seeking voluminous documents from his attorneys—while this appeal is pending. This Court should do what appellate courts regularly do and resolve the JPLs' standing arguments alongside the other issues presented in this appeal.

## CONCLUSION

For the foregoing reasons, Cosimo Borrelli respectfully requests that the Court deny the JPLs' Motion to Dismiss and Stay Proceedings.

Dated: New York, New York
August 28, 2026

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Peter M. Skinner*
Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

*Counsel to Cosimo Borrelli in his capacity as the sole director of each of the Borrelli Debtors*

**CERTIFICATE OF COMPLIANCE**

I, Peter Skinner, hereby certify that this Opposition to Appellees' Motion to Dismiss and Stay Proceedings complies with Federal Rules of Bankruptcy Procedure 8013(f) and 8015(h). Relying on the word count feature of the word-processing system used to prepare the Objection, the Objection contains a total of 5,176 words, excluding the parts of the document exempt pursuant to Bankruptcy Rule 8015(g).

Dated: New York, New York
August 28, 2026

*Peter M. Skinner*
Peter M. Skinner

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2026, I served a true and correct copy of the foregoing document on counsel of record via the Court's electronic filing system.

*Peter M. Skinner*
Peter M. Skinner