Case No. 1:26-cv-05279 (VEC)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re: PRINCE GLOBAL HOLDINGS LIMITED, *et al.*,[1]

*Debtors in Foreign Proceedings*

COSIMO BORRELLI

*Appellant*,

v.

PAUL PRETLOVE, DAVID STANDISH, and JAMES DRURY,

*Appellees*.

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

Case No. 26-10769 (Jointly Administered)

**APPELLANT'S OPENING BRIEF**

[1] The Debtors in these chapter 15 Cases are incorporated in the British Virgin Islands and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at Docket Entry 2-1 in *In re Prince Global Holdings Limited, et al.*, Case No. 26-bk-10769 (MG) (Bankr. S.D.N.Y.). Notwithstanding the case caption, Cosimo Borrelli, in his capacity as the sole director of each of the Borrelli Debtors, disputes that each of these entities is the subject of a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

**COUNSEL FOR APPELLANT**

# TABLE OF CONTENTS


STATEMENT CONCERNING ORAL ARGUMENT ........ 1

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF ISSUES PRESENTED ........ 2

STANDARD OF REVIEW ........ 3

PRELIMINARY STATEMENT ........ 4

STATEMENT OF THE CASE ........ 7

I. FACTUAL BACKGROUND ........ 7

A. Criminal, Civil, and Regulatory Actions Are Brought Against a Single Shareholder of Some of the Debtors ........ 7

B. Relying on the EDNY Allegations, the BVI AG Applies for Provisional Liquidators to Oversee 30 Companies ........ 10

C. Borrelli Is Appointed Sole Director and Directs Debtor Opposition to the JPLs in the BVI ........ 11

II. PROCEDURAL HISTORY ........ 12

SUMMARY OF ARGUMENT ........ 15

ARGUMENT ........ 17

I. THE BANKRUPTCY COURT ERRED IN RECOGNIZING THE BVI PROCEEDINGS BECAUSE THEY ARE GOVERNMENT-INITIATED INVESTIGATIONS RATHER THAN INSOLVENCY PROCEEDINGS ... 17

A. The BVI Proceedings Are Not for the Purpose of Reorganization or Liquidation ........ 18

B. The BVI Proceedings Are Not Collective ........ 22

II. THE BANKRUPTCY COURT EXCEEDED ITS JURISDICTION IN GRANTING DISCRETIONARY RELIEF ........ 24

A. The Bankruptcy Court Exceeded its Jurisdiction by Granting Equitable Relief without Evidence of Negative Economic Impact to the Debtors ....25

B. The Bankruptcy Court Exceeded its Jurisdiction by Granting Extraterritorial Relief ....26

III. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN GRANTING DISCRETIONARY RELIEF WITHOUT APPLYING THE TESTS REQUIRED BY THE BANKRUPTCY CODE ....29

A. The Bankruptcy Court Misapplied the Statutory Mandates Prerequisite to Discretionary Relief ....29

B. The Bankruptcy Court Abused its Discretion in Granting Full Force and Effect to Orders it Had Never Seen ....34

C. The Bankruptcy Court Abused its Discretion in Granting Blanket Discovery Powers ....36

D. The Bankruptcy Court Abused its Discretion in Failing to Consider the Costs of the BVI Proceedings Borne by the Debtors ....37

IV. THE COURT SHOULD DENY RECOGNITION AND DISCRETIONARY RELIEF UNDER 11 U.S.C. § 1506 ....38

A. The Actions of the JPLs Have Rendered the BVI Proceedings Procedurally Unfair ....39

B. Recognition and the Authorized Discretionary Relief Impinge the Value and Import of U.S. Statutory Rights ....43

V. THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT FUNDS HELD BY THE JPLS' LAWYERS IN THE JPLS' CLIENT-TRUST ACCOUNT ARE PROPERTY OF THE DEBTORS ....46

VI. THE BANKRUPTCY COURT ERRED IN CONCLUDING BORRELLI LACKED STANDING TO OBJECT TO THE CHAPTER 15 PROCEEDINGS ....49

CONCLUSION ....50

# TABLE OF AUTHORITIES

**Cases**

*Collins v. Oilsands Quest, Inc.*,
484 B.R. 593 (S.D.N.Y. 2012) ........ 35, 40

*Haarhuis v. Kunnan Enters., Ltd.*,
177 F.3d 1007 (D.C. Cir. 1999) ........ 28

*In re ABC Learning Ctrs. Ltd.*,
728 F.3d 301 (3d Cir. 2013) ........ 26

*In re Aquatic Dev. Grp., Inc.*,
352 F.3d 671 (2d Cir. 2003) ........ 4

*In re ARD Fin., S.A.*,
678 B.R. 711 (Bankr. S.D.N.Y. 2026) ........ 25, 38

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012) ........ 17, 22, 24

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ........ 42

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ........ 46

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009) ........ 24

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) ........ 22, 24

*In re Canterbury Sec., Ltd.*,
675 B.R. 109 (S.D.N.Y. 2025) ........ 39, 43

*In re Charter Commc'ns, Inc.*,
691 F.3d 476 (2d Cir. 2012) ........ 3

*In re Comair Ltd.*,
2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ........ 30

*In re Commodore Int'l, Ltd.*,
253 B.R. 336 (S.D.N.Y. 2000) .......... 49

*In re Condor Ins. Ltd.*,
601 F.3d 319 (5th Cir. 2010) .......... 42

*In re Cozumel Caribe, S.A. de CV*,
482 B.R. 96 (Bankr. S.D.N.Y. 2012) .......... 40

*In re Fairfield Sentry Ltd.*,
147 F.4th 136 (2d Cir. 2025) .......... 43

*In re Fairfield Sentry Ltd.*,
458 B.R. 665 (S.D.N.Y. 2011) .......... 26, 27, 28

*In re Glob. Cord Blood Corp.*,
2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022) .......... *passim*

*In re Global Ocean Carriers Ltd.*,
251 B.R. 31 (Bankr. D. Del. 2000) .......... 47, 48

*In re Gold & Honey, Ltd.,*
410 B.R. 357 (Bankr. E.D.N.Y. 2009) .......... 44

*In re Hernandez*,
483 B.R. 713 (9th Cir. B.A.P. 2012) .......... 4, 26, 47

*In re JPA No. 111 Co.*,
2022 WL 298428 (Bankr. S.D.N.Y. Feb. 1, 2022) .......... 48

*In re JSC BTA Bank*,
434 B.R. 334 (Bankr. S.D.N.Y. 2010) .......... 25, 27, 28

*In re Kirwan Offs. S.à.r.L.*,
792 F. App'x 99 (2d Cir. 2019) .......... 3, 24

*In re Lee*,
472 B.R. 156 (Bankr. D. Mass. 2012) .......... 30

*In re Metcalfe & Mansfield Alt. Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010) .......... 39

*In re Millard*,
501 B.R. 644 (Bankr. S.D.N.Y. 2013) ............................................................18

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011) ............................................................36

*In re Motors Liquidation Co.*,
829 F.3d 135 (2d Cir. 2016)............................................................24

*In re Nortel Networks UK Ltd.*,
538 B.R. 699 (Bankr. D. Del. 2015)............................................................34

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020) ............................................................34

*In re Pirogova*,
612 B.R. 475 (S.D.N.Y. 2020)............................................................3

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018) ............................................................37

*In re Poymanov*,
571 B.R. 24 (Bankr. S.D.N.Y. 2017) ............................................................23

*In re Qimonda AG Bankr. Litig.*,
433 B.R. 547 (E.D. Va. 2010)............................................................ *passim*

*In re Qimonda AG*,
462 B.R. 165 (E.D. Va. 2011)............................................................44

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014) ............................................................35

*In re Rimsat, Ltd.*,
98 F.3d 956 (7th Cir. 1996)............................................................40

*In re Three Arrows Cap., Ltd.*,
647 B.R. 440 (Bankr. S.D.N.Y. 2022) ............................................................36

*In re Tingling*,
990 F.3d 304 (2d Cir. 2021)............................................................4

*In re Toft*,
453 B.R. 186 (Bankr. S.D.N.Y. 2011) .......................................................... 38, 39

*In re Treco*,
240 F.3d 148 (2d Cir. 2001)........................................................................ *passim*

*In re Vebeliunas*,
332 F.3d 85 (2d Cir. 2003).........................................................................3, 18

*In re Vitro S.A.B. de CV*,
701 F.3d 1031 (5th Cir. 2012)............................................................ 30, 31, 33

*In re Vitro, S.A.B. de C.V.*,
473 B.R. 117 (Bankr. N.D. Tex. 2012) .............................................................44

*Jaffé v. Samsung Elecs. Co., Ltd.*,
737 F.3d 14 (4th Cir. 2013)................................................................ 31, 37, 44

**Statutes**

11 U.S.C. § 101 ..................................................................................... *passim*

11 U.S.C. § 105 .............................................................................................25

11 U.S.C. § 109 ..................................................................................... *passim*

11 U.S.C. § 303 .............................................................................................46

11 U.S.C. § 304 ....................................................................................... 34, 44

11 U.S.C. § 328 .............................................................................................45

11 U.S.C. § 329 .............................................................................................45

11 U.S.C. § 330 .............................................................................................45

11 U.S.C. § 365 ................................................................................ 29, 33, 44

11 U.S.C. § 542 ....................................................................................... 27, 28

11 U.S.C. § 1501 .............................................................................................5

11 U.S.C. § 1506 ................................................................................... *passim*

11 U.S.C. § 1507 ................................................................................... *passim*

11 U.S.C. § 1515 ....................17

11 U.S.C. § 1517 ....................2

11 U.S.C. § 1519 .................... 12, 37

11 U.S.C. § 1521 .................... *passim*

11 U.S.C. § 1522 .................... *passim*

28 U.S.C. § 1334 ....................1

28 U.S.C. § 157 ....................1

28 U.S.C. § 158 ....................1

BVI Insolvency Act § 162....................19

BVI Insolvency Act § 170....................19

BVI Insolvency Act § 171....................19

BVI Insolvency Act § 430....................49

**Other Authorities**

UNCITRAL, Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation.................... 18, 20

**Rules**

Fed. R. Bankr. P. 2004....................27

## STATEMENT CONCERNING ORAL ARGUMENT

Appellant respectfully requests oral argument because this matter involves novel global insolvency issues affecting cases in multiple foreign jurisdictions.

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had subject-matter jurisdiction over these chapter 15 cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* M-431 from the U.S. District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). Cosimo Borrelli, in his capacity as the sole director of twenty-five of the Debtors,[2] seeks review of the Bankruptcy Court's *Memorandum Opinion Recognizing the BVI Proceedings as Foreign Main Proceedings and Granting Related Relief* (the "Recognition Opinion") issued on June 11, 2026, [JA-6580–618],[3] *Memorandum Opinion Granting in Part and Denying in Part Cosimo Borrelli's Objection to the Proposed Recognition Order* (the "Supplemental Opinion") issued on June 18, 2026, [JA-6750–63], and *Order Granting Recognition of Foreign Main Proceedings and*

[2] Borrelli is the sole director of each of Prince Global Holdings Limited, Auspicious Tycoon Limited, Bright Team Global Limited, Delightful Thrive Limited, Even Sincerity Limited, Fulam Investment Limited, Giant Victory Holdings Limited, Golden Ascend International Limited, Harmonic State Limited, Luminous Glow Limited, Mighty Divine Limited, Noble Title Limited, Oriental Charm Holdings Investment Limited, Pacific Charm Holdings Investment Limited, Praise Marble Limited, Prince Global Group Limited, Respectful Steed Limited, Retain Prosper Limited, Simply Advanced Limited, Southern Heritage Limited, Star Merit Global Limited, Starry Bloom Limited, Sure Tycoon Limited, Towards Sunshine Limited, and United Riches Global Limited.

[3] References to "JA" are to the Joint Appendix filed contemporaneously with this brief, which is comprised of the Parties' designations and counter-designations of the record on appeal. *See* [ECF No. 4].

*Related Relief* (the "Recognition Order") issued on June 18, 2026, [JA-6764–70], which granted the Appellees' application for recognition of a foreign main proceeding and request for discretionary relief under 11 U.S.C. §§ 1517 and 1521.

On June 18, 2026, Appellant filed his *Notice of Appeal & Statement of Election*. [JA-6771–74]. On July 2, 2026, Appellant filed his *Statement of Issues to Be Presented and Designation of Items to be Included in the Record on Appeal*. [ECF No. 4]. On July 20, 2026, Appellant filed his *Amended Statement of Issues to Be Presented and Designation of Items to be Included in the Record on Appeal*. [ECF No. 6]. On July 28, 2026, the clerk of court for the United States Bankruptcy Court for the Southern District of New York transmitted the record. [ECF No. 11].

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court erred in determining that the BVI Proceedings are "foreign proceedings" under 11 U.S.C. § 101(23) where they were initiated to investigate rather than liquidate the assets of or restructure the debts of the Debtors and were not collective.

2. Whether the Bankruptcy Court exceeded its jurisdiction by (i) granting extraterritorial relief, (ii) barring actions with respect to non-Debtors with no evidentiary basis as to the impact on the Debtors' U.S. property, and (iii) barring actions with respect to non-Debtors who have names similar to the Debtors.

3. Whether the Bankruptcy Court erred by granting discretionary relief without weighing the evidence or applying the tests required by the Bankruptcy Code.

4. Whether the Bankruptcy Court abused its discretion by not denying recognition and related relief under 11 U.S.C. § 1506's public policy exception for due process failings and the impingement of the value and import of U.S. statutory rights enshrined in the Bankruptcy Code.

5. Whether the Bankruptcy Court erred in determining that an advance payment retainer of $25,000 sent by the Appellees to their attorneys, Sullivan & Cromwell ("S&C"), constituted property of third parties, namely, the Debtors, for purposes of 11 U.S.C. § 109(a).

6. Whether the Bankruptcy Court erred in determining that Borrelli lacked standing to object to recognition and discretionary relief in these chapter 15 cases.

## STANDARD OF REVIEW

A district court sitting in an appellate posture reviews factual findings for clear error and legal conclusions *de novo*. *See In re Pirogova*, 612 B.R. 475, 481 (S.D.N.Y. 2020) (citing *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012)). Mixed questions of fact and law are subject to *de novo* review. *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). The extent of a bankruptcy court's jurisdiction is reviewed *de novo*, *In re Kirwan Offs. S.à.r.L.*, 792 F. App'x 99, 101 (2d Cir. 2019),

as is the question of what constitutes "property" of a debtor, *In re Hernandez*, 483 B.R. 713, 719 (9th Cir. B.A.P. 2012).

Discretionary rulings by the bankruptcy court are reviewed for an abuse of discretion. *In re Tingling*, 990 F.3d 304, 307 (2d Cir. 2021). A bankruptcy court abuses its discretion if the decision rests on an error of law, clearly erroneous factual findings, or is not within the range of permissible decisions, *see In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003), or "when a court fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors," *In re Qimonda AG Bankr. Litig.*, 433 B.R. 547, 564 (E.D. Va. 2010) (hereinafter "*Qimonda I*") (citation and internal quotation marks omitted). Any legal conclusions interpreting the statutory sections under which discretionary decisions are made are reviewed *de novo*. *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001) ("We . . . review the bankruptcy court's . . . decision to order [discretionary relief] for abuse of discretion[, but] . . . to the extent that our decision turns on questions of statutory interpretation . . . our review is de novo.").

**PRELIMINARY STATEMENT**

This first-of-its-kind investigative proceeding has nothing to do with a bankruptcy and should not have been recognized under chapter 15.

Provisional liquidators in the British Virgin Islands sought recognition under chapter 15 of BVI proceedings initiated not by creditors to wind up insolvent companies, but by the BVI Attorney General to seize solvent companies (the first time the BVI AG has ever done so). The purpose of the proceedings was not liquidation but investigation. The proceedings were based not on evidence, but on unsubstantiated allegations by the United States government. The companies had no assets or operations in the United States. And the companies themselves were opposing the BVI proceedings and arguing that the liquidators should never have been appointed in the first place.

This novel situation cuts against the grain of chapter 15's very purpose, which is not to facilitate foreign investigations of solvent foreign companies, but "to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a). The Bankruptcy Court, while recognizing that an AG-initiated investigative proceeding had never happened before in the BVI and had never been recognized before under chapter 15, nevertheless barely paused for reflection before finding, after a 90-minute hearing, with nary the opportunity to review much less digest the voluminous record, that "it should be no secret that I'm going to recognize the [foreign] proceeding — proceedings as foreign main proceedings" under chapter 15. [JA-6731:23–25]. In this rush to judgment, it committed multiple reversible errors.

First, because the proceedings are investigatory and not for liquidation, they do not meet chapter 15's requirements for "foreign main proceedings." Second, the Bankruptcy Court exceeded its jurisdiction by granting extraterritorial equitable relief. Third, the court failed to identify the Bankruptcy Code provisions on which it relied or to apply mandatory tests required by the Code. Fourth, it failed to meaningfully consider chapter 15's public policy exception, which is designed to ensure problematic foreign proceedings—like these—do not receive the imprimatur of U.S. law. Fifth, it erroneously concluded that funds the provisional liquidators had deposited in New York—the basis for gaining entrance to the Bankruptcy Court in the first place—were the Debtors' property when they in fact belonged to the provisional liquidators. And sixth, it held the companies' director did not have standing to object, despite the obvious actual and imminent injuries he faced if recognition was granted.

As the saying goes, to the hammer, everything looks like a nail. But this is no ordinary foreign bankruptcy susceptible to ordinary resolution under chapter 15. In fact it is no bankruptcy at all and should not have been recognized by the Bankruptcy Court. The Court should reverse the Bankruptcy Court's orders granting recognition and discretionary relief.

## STATEMENT OF THE CASE

### I. FACTUAL BACKGROUND

#### A. Criminal, Civil, and Regulatory Actions Are Brought Against a Single Shareholder of Some of the Debtors

On October 14, 2025, the United States Attorney's Office for the Eastern District of New York unsealed an indictment charging Chen Zhi with one count of wire fraud conspiracy and one count of money laundering conspiracy. [JA-3352–76] (the "EDNY Indictment"). On the same day, the EDNY commenced a civil action seeking forfeiture of approximately 127,271 Bitcoin. [JA-3378–445] (the "EDNY Forfeiture Complaint"). The EDNY Forfeiture Complaint alleges that Chen is the founder and operator of the Prince Group, a Cambodian corporate conglomerate comprising dozens of business entities that operate in over thirty countries. [JA-3381–84 ¶¶ 15–16].[4]

The EDNY Indictment contains several allegations that are demonstrably wrong and cause for healthy skepticism of how the government conducted its investigation and brought its case. For example, the Indictment includes an image of "phone farms"—"automated call centers used to facilitate cryptocurrency investment fraud and other cybercrimes"—that Chen allegedly "maintained":

[4] Borrelli's attorneys, Boies Schiller Flexner, also represent Chen and the Prince Group in the EDNY Forfeiture Action.



[JA-3361 ¶ 33]; *see also* [JA-3391 ¶ 25]. But that image actually comes from a March 2023 Chinese-language news article discussing the use of cell phones to artificially inflate viewership of e-commerce live-streams:




[JA-3460].

The EDNY Forfeiture Complaint and Indictment also cite photographs in support of the allegation that Chen used violence as part of his scheme:



[JA-3364–65 ¶ 40] ("CHEN possessed images illustrating Prince Group's violent methods").

But this photograph comes from an April 2020 article entitled "A man got his testicles stuck between plastic chairs during the lockdown. The situation got out of his control and he had to call an ambulance," which recounts the stories of several men injured from sitting naked on chairs with slats, and begins "Be careful, men! Never sit naked on a plastic chair!":



[JA-3460–61].

### B. Relying on the EDNY Allegations, the BVI AG Applies for Provisional Liquidators to Oversee 30 Companies

Despite these obvious problems, the Attorney General of the British Virgin Islands (the "BVI AG") embraced the EDNY's allegations. On January 5, 2026, she filed *ex parte* applications in the High Court of Justice, Commercial Division, of the British Virgin Islands (the "BVI Court") seeking appointment of liquidators over 30 companies (the "Debtors") on the grounds that doing so was "just and equitable" and in the public interest. [JA-3768–79]; [JA-3789 ¶ 28]. The companies were not insolvent. But Chen controlled 23 of them, and that was apparently enough for the BVI AG. *See, e.g.*, [JA-3771 ¶ 3].

On January 9, 2026, following an *ex parte* hearing, the BVI Court issued thirty orders appointing the JPLs over each of the companies on a temporary, provisional basis ("Appointment Orders"). [JA-4378 ¶¶ 1–2]. The BVI applications included no evidence and none has been supplied since. [JA-3829:13–16]. This is the first time the BVI AG has exercised its authority to seek liquidation on public interest grounds. [JA-3824:23–3825:5]; [JA-4313:21–4314:9]. The JPLs were given investigatory duties and charged with maintaining the status quo by identifying and preserving assets pending a determination of whether the companies would be liquidated. [JA-4379–80 ¶ 3(a)–(b), (i), (n)]; [JA-3344 ¶ 64]; [JA-4297:22–4298:2].

### C. Borrelli Is Appointed Sole Director and Directs Debtor Opposition to the JPLs in the BVI

On January 6, 2026, Chen, a Chinese national who previously held Cambodian citizenship, was sent from Cambodia to China, where he has been detained with no contact with his outside lawyers. [JA-3348 ¶ 8]. Prior to his rendition to China, Chen had given a full power of attorney to professionals within his business. *Id.*

In February 2026, Borrelli was appointed as the sole director of 25 of the 30 companies that were subject to the Appointment Orders (the "Borrelli Debtors"). *Id.* ¶ 9. Borrelli exercised his residuary power as director and directed the Borrelli Debtors to retain counsel and oppose the BVI liquidation proceedings. [JA-4409 ¶ 36].

On April 16 and 17, 2026, the BVI Court held a hearing on the liquidation applications. At the hearing, Justice Wallbank summarized the danger of letting the BVI AG's unusual "public interest" liquidations, based on untested allegations with zero underlying evidence, continue unchecked:

> It's obviously all very well to say that there has been an indictment put forward . . . and other steps taken by OFAC and the U.K., for example. . . . Do you, however, bring to this [c]ourt any of the evidence which informed those results? . . .
>
> Do these [c]ompanies that are now being put up against the wall to be finished off, does the evidence stack up for finishing off those Companies? And just because somebody said in an overseas [c]ourt that there's a man called Chen out there who has been successfully indicted,

> then is that enough to finish these Companies off? Can't I see some of the underlying evidence, please? . . .
>
> I mean, it is so very easy for one little special agent in the FBI, or whatever his name might be, to write something up and embellish it, because he wants to succeed on a case or for whatever reason and then he verifies a complaint and even on the pain of perjury. And then everybody says, well, you know he is a special agent in the FBI, isn't he? . . .
>
> And then you get the snowball effect and before you know it, the entire nations and jurisdictions operate on the fanciful fictitious mind of one little man in some field office in some semi-populated state and with no kind of check and balance of whether what he says is actually true.

[JA-3854:2–12; 3857:9–16; 3569:7–23]. The BVI Court's decision on the Debtors' application to discharge the JPLs is pending.

## II. PROCEDURAL HISTORY

These chapter 15 cases were commenced on April 8, 2026 by Paul Pretlove, David Standish, and James Drury in their capacity as joint provisional liquidators (the "JPLs") appointed in the BVI Proceedings. [JA-1–61]. The JPLs first filed a Verified Petition under Chapter 15 for Recognition of Foreign Main Proceedings and Related Relief and a proposed order seeking recognition of the BVI Proceedings. *Id.* The JPLs also filed an emergency motion for *ex parte* and provisional relief under 11 U.S.C. § 1519, [JA-1544–92], which they withdrew on April 9, 2026, [JA-1593–97]. That same day, the JPLs filed a new motion for emergency relief. [JA-1598–645].

On April 16, 2026, the Borrelli Debtors objected to the JPLs' motion for preliminary relief, pointing out that, among other deficiencies, the JPLs had misquoted chapter 15 of the Bankruptcy Code and had misquoted and misidentified multiple decisions. [JA-2742–43 & n.8]. On April 18, the JPLs withdrew their emergency motion for a second time, [JA-2764–65], filed a letter explaining that their motion contained "artificial intelligence 'AI' 'hallucinations[,]' [which] are instances in which artificial intelligence tools fabricate case citations, misquote authorities, or generate non-existent legal sources," [JA-2759–63], and filed a corrected motion for emergency relief, [JA-2766–826].

On April 22, the Bankruptcy Court (Chief Judge Glenn) held a roughly 80-minute hearing on the JPLs' motion for emergency relief. [JA-3243–302]. After the hearing, the court granted the JPLs' emergency motion over the objection of the Borrelli Debtors and two other Debtors represented by different counsel. [JA-3183–218 & 3303–08].

On May 21 and 29, 2026, respectively, Borrelli submitted his Objection and Corrected Objection to the Verified Petition (the "Objection") opposing recognition. [JA-5105–49 & 5241–81]. Borrelli argued he had standing to object under Federal Rule of Bankruptcy Procedure 1012(a) as a "party in interest," in his capacity as the

sole director of the Borrelli Debtors. *See* [JA-5264–66].[5] Second, he argued the JPLs' basis for § 109(a) eligibility—their own retainer account held with their own U.S. lawyers—constituted property of the JPLs and not property of the Debtors. *See* [JA-5266–68]. Third, he argued that the JPLs failed to meet their debtor-by-debtor evidentiary burden. *See* [JA-5268–69]. Fourth, he argued the BVI Proceedings were not "foreign proceedings" under 11 U.S.C. § 101(23) because they were not insolvency proceedings: they were government-initiated investigations. *See* [JA-5269–73]. Fifth, he argued recognition would be manifestly contrary to the public policy of the United States in violation of 11 U.S.C. § 1506. *See* [JA-5273–75]. Finally, he argued that the discretionary relief requested by the JPLs failed the required balancing tests set forth in chapter 15 and was *ultra vires* to their BVI law authority. *See* [JA-5275–80].

On June 9, 2026, the Bankruptcy Court held the recognition hearing. The parties submitted testimony from four witnesses and dozens of exhibits. The court further recognized that a BVI AG-initiated JPL appointment as part of a public interest investigative proceeding had "never happened before" and that the court had "never been asked to recognize that type of proceeding." [JA-6686:21–6687:1]. Nevertheless, before the roughly 90-minute hearing had even ended, the Bankruptcy

[5] As explained in Borrelli's Opposition to the Appellees' Motion to Dismiss and Stay Proceedings [ECF No. 20 at 7–8, 14 n.7], the BVI Court ruled on May 14, 2026 that Borrelli did not have the authority under BVI law to direct the Borrelli Debtors to object to the JPLs' chapter 15 petition. [JA-6845–46]. The Borrelli Debtors have appealed that order in the BVI.

Court granted recognition over Borrelli's objections. [JA-6731:23–25]. On June 11, 2026, the Bankruptcy Court issued its Recognition Opinion recognizing the BVI Proceedings as foreign main proceedings. [JA-6580–6618]. On June 18, 2026, the Bankruptcy Court issued its Supplemental Opinion and Recognition Order granting relief. [JA-6750–70]. This appeal followed.

## SUMMARY OF ARGUMENT

The Bankruptcy Court committed multiple reversible errors in recognizing the BVI Proceedings and granting the JPLs' sweeping discretionary relief.

*First*, the Bankruptcy Court erred in recognizing the BVI Proceedings as a "foreign proceeding" under 11 U.S.C. § 101(23). The BVI AG initiated the BVI Proceedings to appoint the JPLs to assist in her investigation and preserve assets, not to liquidate or reorganize the Debtors. Because the BVI Proceedings are investigatory and not for liquidation, no creditor body has been identified. Therefore, the BVI Proceedings are not "for the purposes of reorganization or liquidation" or "collective," as required for recognition under chapter 15.

*Second*, the Bankruptcy Court exceeded its jurisdiction by granting extraterritorial relief that enjoins all persons and entities from taking action within or outside the United States, including non-Debtor subsidiaries and entities with similar names. Such relief violates chapter 15's territorial limitations.

*Third*, the Bankruptcy Court erred in authorizing expansive discretionary relief without identifying applicable Bankruptcy Code provisions or applying mandatory balancing tests required by those provisions. This includes failing to perform the § 1521(a) analysis, the § 1522(a) balancing test, the § 1507(b) test, or the § 1521(e) mandatory requirements. In doing so, the Bankruptcy Court abused its discretion in granting full force and effect to BVI Court orders it never saw, authorizing blanket discovery, and failing to consider the considerable costs imposed on the Debtors.

*Fourth*, the Bankruptcy Court abused its discretion by not denying recognition and the JPLs' expansive discretionary relief under 11 U.S.C. § 1506's public policy exception. Recognizing the BVI Proceedings is manifestly contrary to U.S. public policy because the proceedings are procedurally unfair. The JPLs have engaged in gamesmanship through *ex parte* communications in the BVI and by strategically shifting their positions between the BVI and the United States. In doing so, the JPLs have wielded the BVI Proceedings and chapter 15 proceedings to expand their authority beyond that contemplated in the Appointment Orders.

*Fifth*, the Bankruptcy Court erred in finding that S&C's retainer—an advance payment sent by the JPLs to *their own* lawyers—constituted property of the Debtors sufficient to satisfy 11 U.S.C. § 109(a). S&C represents the JPLs, *not* the Debtors.

The funds held in the S&C Retainer are the JPLs' funds and do not belong to the Debtors.

*Sixth*, the Bankruptcy Court erred in concluding that Borrelli lacked standing to object to the chapter 15 cases for the reasons articulated in his Response in Opposition to Appellees' Motion to Dismiss and Stay Proceedings. [ECF No. 20].

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED IN RECOGNIZING THE BVI PROCEEDINGS BECAUSE THEY ARE GOVERNMENT-INITIATED INVESTIGATIONS RATHER THAN INSOLVENCY PROCEEDINGS

The Bankruptcy Court erroneously concluded that the BVI Proceedings are "foreign main proceedings" eligible for recognition under § 1515(a). [JA-6613–15]. The Bankruptcy Code defines a "foreign proceeding" as:

> a *collective* judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, *for the purpose of reorganization or liquidation*.

11 U.S.C. § 101(23) (emphasis added); *see also In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (listing the seven elements in § 101(23)). A court must deny a petition if the foreign representative fails to "meet the burden of proof on any one of the definitional elements." *See id.*

The BVI Proceedings fail two prongs of § 101(23). They are not "for the purposes of reorganization or liquidation" because they were initiated to investigate

alleged wrongful conduct and to preserve the status quo, not to liquidate the debtor's assets or effectuate a restructuring of its debt. And they are not "collective" because there is no larger body of creditors to benefit from any distributions: this is functionally a bilateral proceeding commenced by the BVI AG against the Debtors.

The Bankruptcy Court ruled against Borrelli on both of these contested elements. Those rulings are mixed questions of fact and law subject to *de novo* review. *See In re Vebeliunas*, 332 F.3d at 90.

### A. The BVI Proceedings Are Not for the Purpose of Reorganization or Liquidation

The "nature of the proceeding . . . governs the inquiry" of whether the BVI Proceedings are "for the purpose of reorganization or liquidation." *In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *12 (Bankr. S.D.N.Y. Dec. 5, 2022) (quoting *In re Millard*, 501 B.R. 644, 650 (Bankr. S.D.N.Y. 2013)). Foreign proceedings "that are designed to prevent dissipation and waste, rather than to liquidate or reorganize the insolvency estate" or those "in which the powers conferred and the duties imposed upon the foreign representative are more limited than the powers or duties typically associated with liquidation or reorganization" are ineligible for recognition. *See* UNCITRAL Guide ¶ 77 (2014).[6]

[6] Chapter 15 enacts under U.S. law the UNCITRAL Model Law Guide on Cross-Border Insolvency. *See* UNCITRAL, MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT AND INTERPRETATION 42 (Jan. 2014) [hereinafter "UNCITRAL Guide"], https://digitallibrary.un.org/record/1487896/files/1997-model-law-insol-2013-guideenactment-e.pdf.

The BVI Proceedings were not commenced for the purpose of liquidating assets to pay creditors or restructure debts. The Debtors have no creditors to pay and no debts to restructure. Instead, the BVI AG commenced these proceedings on the grounds that doing so would be "just and equitable" and in the "public interest." *See* [JA-3774–75 ¶¶ 17–29; 3789 ¶ 28]. Although § 162 of the BVI Insolvency Act sits within the Act's liquidation framework, the "just and equitable" ground in § 162(1)(b) and the "public interest" ground in § 162(1)(c) of the Act do not require any finding or allegation of insolvency. *See* BVI Insolvency Act § 162(1)(b) & (c). Nor has the BVI AG ever claimed the Debtors are insolvent or sought to invoke the insolvency provisions of the larger statute in which the "public interest" section sits. *See* [JA-3774–75 ¶¶ 17–29]; [JA-3789 ¶ 28].

The powers granted by the BVI Court further make plain that the JPLs were not appointed for the purpose of liquidating assets. The BVI Court granted the JPLs limited authority "necessary to maintain the value of the assets owned by the [Debtors] and to carry out the functions for which [the JPLs] are appointed." [JA-4378 ¶ 2]. *See also* BVI Insolvency Act §§ 170–171 (provision governing appointment and powers of provisional liquidators). Those "functions" are to assist the BVI AG's investigation, cooperate with foreign enforcement and sanctions authorities, and preserve the Debtors' assets in the meantime. *See* [JA-4378–81 ¶¶ 2–3, 10]; [JA-3799 ¶ 12.3] ("[T]he appointment will protect the assets with the

liquidators able to take control of the [Debtors], investigate their activities, [and] secure the assets . . . .").

These investigatory and asset preservation powers, which do not include authority to liquidate the assets of the Debtors or to reorganize their debts, do not "resemble the common legal or layperson understandings of the word 'reorganization.'" *See In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *11 (citing Reorganization, Black's Law Dictionary (11th ed. 2019)). And the Appointment Orders "do not communicate a belief that [the BVI] [P]roceeding[s] relate[] to insolvency or [are] in need of . . . aid under [c]hapter 15." *Id.* at *12. Because the BVI Proceedings are "designed to prevent dissipation and waste, rather than to liquidate or reorganize the insolvency estate," they are not foreign proceedings within the meaning of § 101(23). *See* UNCITRAL Guide ¶ 77.

In *In re Global Cord Blood*, the Bankruptcy Court for the Southern District of New York denied recognition because, as here, the provisional liquidators were not appointed under statutory provisions "concern[ing] the creation of an arrangement or compromise with creditors . . . most akin to U.S. reorganization proceedings." 2022 WL 17478530, at *12. The foreign court in *In re Global Cord Blood* appointed the provisional liquidators under the sections of the Cayman Companies Act "implicat[ing] the . . . [c]ourt's 'just and equitable' powers" and preventing dissipation and misuse of company assets, oppression of minority shareholders, or

company mismanagement or misconduct. *Id.* Likewise, here, the JPLs have been appointed provisionally to investigate the Debtors and maintain the value of their assets, *not* to reorganize or liquidate them. No winding-up processes have been initiated, the JPLs lack the authority to commence winding-up, and the BVI AG has disavowed that winding-up is either the desired or necessary outcome of these processes. [JA-3928:18–3929:7; JA-3930:5–3931:10] *and* [JA-3726] (BVI AG assuring the Court that the Debtors could easily be restored if no justification for winding-up was found, because no liquidation activities were taking place and none were bound to). The Bankruptcy Court thus erred because, as in *In re Global Cord Blood*, "no 'winding up' process has been commenced," "nor is any effort underway to 'liquidate' corporate assets or the corporation itself." 2022 WL 17478530, at *10.

The Bankruptcy Court declined to apply *In re Global Cord Blood*, reasoning that while the JPLs in both cases did not yet have the power to liquidate their respective debtors, the JPLs there said that they hoped to revive the debtors without having to resort to liquidation, while the JPLs here purportedly want to eventually liquidate the Debtors. [JA-6613–14]. But the JPLs' hopes cannot transform the provisional stage of the BVI Proceedings into something it is not: a proceeding that was commenced "for the purposes of liquidation or reorganization." Indeed, what controlled in *In re Global Cord Blood* was "the *current* purpose of the proceeding," which, because "it was not underway to 'liquidate' corporate assets or the

corporation itself," was "fatal" to those JPLs' efforts to satisfy § 101(23)'s requirement that a "foreign proceeding" be brought "for the purpose of liquidation or reorganization." 2022 WL 17478530, at *10 (emphasis added). The same is true here. *See id.*; *see also In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 906 (Bankr. S.D. Fla. 2010) (because foreign court "had ordered neither a winding up nor a reorganization . . . [the proceeding] was not 'for the purpose of reorganization or liquidation' and therefore was not a 'foreign proceeding'").

The Bankruptcy Court also conflated the JPLs with the BVI AG in finding that "the BVI Originating Applications and Skeleton Argument of the BVI [AG] provide evidence of" the JPLs' subjective intent. [JA-6614]; *see also* [JA-6613] (erroneously stating that it is the BVI AG who preserves the Debtors' assets and "coordinates administration and recovery for creditors"). Indeed, the JPLs had not even been appointed when the BVI AG drafted and filed its originating applications. The Bankruptcy Court's decision should thus be reversed for the separate reason that the BVI AG's filings do not, as the court erroneously concluded, "provide evidence" of the JPLs' purpose.

### B. The BVI Proceedings Are Not Collective

The BVI Proceedings are also not collective. A foreign proceeding is "collective" when it "considers the rights and obligations of *all* creditors" and "is for the general benefit of creditors." *In re Ashapura Minechem Ltd.*, 480 B.R. at 136

(citation omitted). This includes the treatment of various creditors' claims, potential participation of creditors in the proceeding, distribution of assets according to statutory priorities, a mechanism for judicial review, and notice to creditors to protect their rights. *See In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *7. At bottom, the "focus on and involvement of 'creditors' [is] the main definitional hallmark of 'collective' action within the meaning of section 101(23)." *See id.* at *8.

The BVI Proceedings are not "collective" because the Debtors have no known creditors. As such, no formal notice of the BVI Proceedings has issued to any potential creditor body, and no claim-submission, claim-adjudication, distribution, or restructuring processes have been initiated. *See* [JA-4107:14–4109:7]. Even today, there is no suggestion that any of the Debtors are insolvent. That renders the BVI Proceedings a functionally bilateral proceeding of government against private entity, not a civil insolvency proceeding. *See In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *8 ("A proceeding is collective if it considers the rights and obligations of all of a debtor's creditors." (quoting *In re Poymanov*, 571 B.R. 24, 33 (Bankr. S.D.N.Y. 2017))).

The Bankruptcy Court, citing no authority, adopted the JPLs' position that the BVI Proceedings were nonetheless "collective" because they seek to benefit the Debtors as a whole and not the interests of some discrete set of claimants. [JA-6614].

But as Judge Jones observed in rejecting the same argument in *In re Global Cord Blood*:

> All relevant case law, including *Ashapura*, unequivocally and at length invokes a focus on and involvement of "creditors" as the main definitional hallmark of "collective" action within the meaning of section 101(23). *See, e.g.*, *In re Ashapura*, 480 B.R. at 136 ("First and foremost, '[a] collective proceeding is one that considers the rights and obligations of all creditors'—that is for the general benefit of creditors.") (quoting [*In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009]); *In re British Am. Ins.*, 425 B.R. at 902 ("the word 'collective' . . . contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action").

2022 WL 17478530, at *8. This Court should likewise reject the JPLs' focus on alleged collective corporate benefit, because "there is nothing about [the BVI Proceedings] that is specifically oriented toward creditors," *id.*, and "Courts' consistent focus on the existence of creditor-related proceedings abroad reflects the overall purpose and focus of [c]hapter 15." *Id.* at *9.

## II. THE BANKRUPTCY COURT EXCEEDED ITS JURISDICTION IN GRANTING DISCRETIONARY RELIEF

The Bankruptcy Court exceeded its jurisdiction in granting discretionary relief that (1) stayed actions with respect to non-Debtors whose names are similar to the names of the Debtors' subsidiaries and (2) applies extraterritorially. The extent of a bankruptcy court's jurisdiction is reviewed *de novo*. *In re Kirwan Offs. S.à.r.L.*, 792 F. App'x at 101 (reviewing rulings as to the bankruptcy court's jurisdiction *de novo* (citing *In re Motors Liquidation Co.*, 829 F.3d 135, 152 (2d Cir. 2016))).

### A. The Bankruptcy Court Exceeded its Jurisdiction by Granting Equitable Relief without Evidence of Negative Economic Impact to the Debtors

The Recognition Order enjoins and restrains actions "in the name or on behalf of (a) any of the Debtors, (b) any of the Debtors' controlled subsidiaries or any similar general name or designation that does not clearly refer to a specific legal entity or natural person." [JA-6769 ¶ 21]. A stay to protect non-debtors stretches the limits of bankruptcy court jurisdiction and is authorized pursuant to § 105(a) of the Bankruptcy Code only when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *In re ARD Fin., S.A.*, 678 B.R. 711, 733 (Bankr. S.D.N.Y. 2026). The JPLs did not evidence harm to the Debtors' foreign estates—much less to their U.S.-located property, as chapter 15 would require[7]—to justify a § 105(a) stay extension to non-Debtor controlled subsidiaries. This relief also works against the "universalism" approach of chapter 15, because it could prevent, for example, Hong Kong liquidators from taking appointments over the Hong Kong entities in the Prince Group. For the same reasons, the Bankruptcy Court plainly exceeded its jurisdiction by extending the stay not only as to actions taken for non-Debtor subsidiaries, but also those taken on behalf of "any general name or designation" that is "similar" in name to the Debtors'

[7] *In re JSC BTA Bank*, 434 B.R. 334, 345 (Bankr. S.D.N.Y. 2010) (explaining that the U.S. bankruptcy court's "limited in rem jurisdiction" under chapter 15 means that it can only enjoin actions that would impact property located within the United States, and does not extend to protecting foreign-located property).

controlled subsidiaries. Accordingly, the Bankruptcy Court erred in enjoining the actions of non-Debtors, and that portion of the Recognition Order should be reversed.

### B. The Bankruptcy Court Exceeded its Jurisdiction by Granting Extraterritorial Relief

The Recognition Order should also be reversed to the extent it applies extraterritorially.

First, the Recognition Order "enjoin[s] and restrain[s]" "all persons and entities subject to [the Bankruptcy Court's] jurisdiction" from "taking any actions *within or outside of the United States*, except with respect to the BVI Proceedings." [JA-6769 ¶ 21] (emphasis added). This injunction exceeds the jurisdiction of the Bankruptcy Court to the extent it applies "outside the United States." *In re Fairfield Sentry Ltd.*, 458 B.R. 665, 679 (S.D.N.Y. 2011) ("These proceedings are territorial and are not designed to have extraterritorial effect." (citing 8 Collier on Bankruptcy ¶ 1505[2])); *see also In re JSC BTA Bank*, 434 B.R. at 346 ("It is unimaginable" that Congress intended the automatic chapter 15 stay "to interfere with proceedings that may be pending anywhere in the world"). Chapter 15 implements a "universalist" approach to cross-border insolvency that allows each ancillary jurisdiction to decide for itself whether it will recognize and enforce the effects of the plenary foreign proceeding. *See generally In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 305–07 (3d Cir. 2013). It is not the role of the United States to decide for other jurisdictions that

the BVI Proceedings bar legal actions in their domains. *In re JSC BTA Bank*, 434 B.R. at 337 (declining to "convert a bankruptcy court in the United States into what amounts to a global clearing house for resolving the right to proceed in an appropriate foreign tribunal against a foreign business enterprise that may have only insignificant contacts with the United States"). In enjoining the actions of non-Debtors outside the United States, the Bankruptcy Court exceeded its jurisdiction.

Second, the Bankruptcy Court exceeded its jurisdiction to the extent it purported to authorize the turnover of property outside the United States. The Recognition Order grants authority to conduct discovery under § 1521(a)(4) and Rule 2004 of the Bankruptcy Rules and to seek turnover under § 542 of the Bankruptcy Code. [JA-6768 ¶ 19]. It then states:

> The discovery authorized in this paragraph is not limited to documents located within the United States and includes the authority to seek production of documents within the possession, custody, or control of any person or entity subject to this Court's jurisdiction, including documents held by such person's or entity's agents or attorneys, wherever such documents may be located.

*See id.* To the extent this authorizes the JPLs to pursue turnover of foreign-located property under § 542 of the Bankruptcy Code as a form of "discovery," it exceeds the *in rem* jurisdiction of the Bankruptcy Court.

Turnover powers under § 542 require *in rem* jurisdiction over the property sought. *In re Fairfield Sentry Ltd.*, 458 B.R. at 682 (explaining that "all of the relief permitted by the [Bankruptcy Code] involves *something* over which the bankruptcy

court has jurisdiction, be it witnesses, 11 U.S.C. § 1521(a)(4), other court proceedings, *id.* § 1521(a)(1), or property, *id.* § 1521(a)(5). . . . [W]here the issue is *property*, principles of *in rem* jurisdiction command that the court have jurisdiction over the *res*"). The *in rem* jurisdiction of chapter 15 courts is limited to assets located within the territorial jurisdiction of the United States. *Id.* at 679; *In re JSC BTA Bank,* 434 B.R. at 345 ("In the chapter 15 context, a bankruptcy court's jurisdiction over property of the debtor is expressly limited to property located 'within the territorial jurisdiction of the United States.'"). A chapter 15 court lacks jurisdiction to authorize § 542 pursuit of foreign-located assets. *See Haarhuis v. Kunnan Enters., Ltd.*, 177 F.3d 1007, 1012 (D.C. Cir. 1999) ("[A] United States court cannot order the turnover . . . of property over which it has no jurisdiction"); *In re Fairfield Sentry Ltd*., 458 B.R. at 682 ("[W]here the foreign representative seeks an order to turn over or realize assets . . . [t]hen assets must be located within the bankruptcy court's jurisdiction.").

* * *

In sum, the Recognition Order should be reversed because the Bankruptcy Court exceeded its jurisdiction in granting injunctive relief over non-Debtors and in authorizing turnover of foreign assets.

## III. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN GRANTING DISCRETIONARY RELIEF WITHOUT APPLYING THE TESTS REQUIRED BY THE BANKRUPTCY CODE

In addition to these jurisdictional defects, the Bankruptcy Court also abused its discretion in granting discretionary relief in paragraphs 19–21 of the Recognition Order pursuant to 11 U.S.C. §§ 1521, 1522, and 1507.

The Bankruptcy Court's decision to issue discretionary relief is reviewed for abuse of discretion. However, interpretation of the statutory mandates of §§ 1521, 1522, and 1507 is reviewed *de novo*. *In re Treco*, 240 F.3d at 155 ("We . . . review the bankruptcy court's . . . decision to order [discretionary relief] for abuse of discretion[, but] . . . to the extent that our decision turns on questions of statutory interpretation . . . our review is de novo."); *see also Qimonda I*, 433 B.R. at 555 (reviewing for abuse of discretion the bankruptcy court's decision to impose § 365(n) as a form of discretionary relief, but its threshold determination that § 365(n) was not imposed automatically was a question of statutory interpretation subject to *de novo* review).

### A. The Bankruptcy Court Misapplied the Statutory Mandates Prerequisite to Discretionary Relief

Several provisions in chapter 15 authorize discretionary relief. Section 1521(a)(1)–(7) enumerates seven specific forms of relief, such as the grant of discovery powers, and contemplates "any appropriate relief" outside those seven

enumerated items; and § 1507 contemplates "additional assistance." 11 U.S.C. §§ 1521(a), 1507.

Each of these imposes a different mandatory test that the Bankruptcy Court must apply before relief may be granted. Relief granted under § 1521 must be "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1521(a). It must also satisfy § 1522, which provides that the court may grant § 1521 relief "only if the interests of the creditors and other interested entities, including the debtor are sufficiently protected." 11 U.S.C. § 1522(a). Relief granted as "additional assistance" under § 1507(a) must satisfy § 1507(b), which requires a court to "consider whether such additional assistance, consistent with the principles of comity, will reasonably assure" five enumerated policy goals motivating chapter 15. 11 U.S.C. § 1507(b)(1)–(5).

The burden to satisfy those relevant tests rests with the foreign representatives seeking relief. *In re Comair Ltd.*, 2021 WL 5312988, at *7–8 (Bankr. S.D.N.Y. Nov. 14, 2021) (foreign representatives have the burden to show relief is "necessary . . . to protect the assets of the debtor or the interests of the creditors" under § 1521(a)); *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012) (establishing entitlement to relief under 11 U.S.C. §§ 1521(b) and 1522(a) lies with foreign representatives); *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1069 (5th Cir. 2012) ("Vitro has not met its

burden of showing that the relief requested [under § 1507] is substantially in accordance with the circumstances that would warrant such relief in the United States.").

In these cases, the JPLs sought discretionary relief after briefing concluded and did not identify the Bankruptcy Code sections supporting their application, offer facts to satisfy the tests applicable to the relevant Code sections, or submit evidence to support the same. *See generally* [JA-32–61]; [JA-2839–46]. The Bankruptcy Court, in turn, did not determine which Code sections governed or apply the tests mandated by the statute. *See generally* [JA-6764–70].

First, the Bankruptcy Court failed to perform § 1521(a) tests, which require that discretionary relief be "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1521(a); *see generally* [JA-6580–618]; [JA-6750–63] (no discussion of § 1521(a) and no factual findings that the relief was necessary for those stated purposes).

Second, the Bankruptcy Court failed to perform § 1522(a) tests, which required it to perform "a particularized balancing analysis" for discretionary relief, "weighing [] the interests of the foreign representative against the competing interests of those who would be adversely affected by the grant of such relief []." *Jaffé v. Samsung Elecs. Co., Ltd.*, 737 F.3d 14, 29 (4th Cir. 2013) [hereinafter *Qimonda II*] (citing § 1522(a)); *In re Vitro*, 701 F.3d at 1060 ("[Section]

1522 . . . requires that the relief contemplated under § 1521 balance the interests of the creditors and debtors."). The Bankruptcy Court's § 1522 discussion is confined to one sentence:

> The BVI Proceedings meet [the § 1522] standard. *[They] were initiated by the BVI Attorney General in the public interest, seeks [sic] to distribute proceeds to victims and claimants, in a manner broadly consistent with U.S. law.* Accordingly, the Court grants the discretionary relief.

[JA-6617] (emphasis added). This analysis, which appears to apply just one of the five § 1507(b) factors, does not satisfy § 1522.[8] *See Qimonda I*, 433 B.R. at 558 (remanding on account of the "anemic record" as to "whether the [b]ankruptcy [c]ourt adequately balanced the parties' interests, as required by § 1522," as it did not balance "the nature of the U.S. patents licensed to appellants, and whether cancellation of licenses for those patents would put at risk appellants' investments in manufacturing or sales facilities in this country for products covered by the U.S. patents"). And the few other factual findings scattered throughout the Recognition Opinion contain clear errors that contradict the record and appear to include phrasing leftover from orders entered in other cases. *See, e.g.*, [JA-6612] (stating that Interpath is "the law firm for the JPLs");[9] [JA-6613] (stating that "the [BVI AG]

[8] It is also incorrect as a matter of BVI law. The BVI AG has repeatedly disavowed to the BVI Court that actual liquidation activities—like distributing proceeds to victims—are currently part of or will necessarily result from these investigatory proceedings. *See* [JA-3780–94]; [JA-3798–99 ¶ 10.3]; [JA-3807–11 ¶¶ 6.1–6.4, 17]. And no evidence had been submitted to the Bankruptcy Court as to the distribution provisions of BVI insolvency law. *See generally* [JA-757–1543]; [JA-2855–3178].

[9] The JPLs work for Interpath. [JA-62–63].

preserves the Debtors assets [sic] and coordinate [sic] administration and recovery for creditors"); [JA-6618] (stating that "there is cause to lift the stay so that the JPLs may immediately engage in the implementation of restructuring steps"). Finally, mere conclusory statements—such as the Bankruptcy Court's assertion that "[t]he BVI Proceedings meet [the § 1522] standard"—do not count as fact findings or address the required statutory tests. *Qimonda I*, 433 B.R. at 558 (remanding where bankruptcy court "did not articulate its reasons for concluding that the application of § 365(n) would unavoidably [damage] the [debtor's] patent portfolio" and "[l]eft unexplained . . . why"); *id.* (rejecting the court's conclusory basis for its discretionary relief with a simple rebuff: "It is not readily apparent why this is so.").

Third, the Bankruptcy Court failed to perform a § 1507(b) test. *Compare* [JA-6766 ¶ 10] (stating that the relief granted is warranted under § 1507), *with* [JA-6577–79] *and* [JA-6750–63] (containing no mention of § 1507 or any of the five factors the Court was required to consider under § 1507(b)). "[F]ailure to meet any one of [the five factors of § 1507] can suffice to deny enforcement." *In re Vitro*, 701 F.3d at 1063 n.33 (citing *In re Treco*, 240 F.3d at 158–61).

Fourth, the JPLs did not satisfy, and the Bankruptcy Court did not apply, the mandatory requirements of § 1521(e) applicable to the Recognition Order's paragraph 21 injunction. *See* 11 U.S.C. § 1521(e) (imposing the "standards, procedures, and limitations applicable to an injunction" to relief under § 1521(a)(1),

(2), (3) and (6)). The JPLs did not argue, and the Bankruptcy Court did not find, irreparable harm, a likelihood of success on the merits, a balance of harms in favor of the JPLs, or that the public interest favored the unprecedented extraterritorial injunction. *In re Nortel Networks UK Ltd*, 538 B.R. 699, 704 (Bankr. D. Del. 2015) (section 1521(e) imposes the standards to an injunction to relief sought under § 1521); *In re Olinda Star Ltd*., 614 B.R. 28, 48 (Bankr. S.D.N.Y. 2020) (making the necessary finding of irreparable harm required by § 1521(e) before issuing an injunction).

For all these reasons, the Recognition Order should be vacated and remanded. *See Qimonda I*, 433 B.R. at 571 ("[T]he Bankruptcy Court did not, as required by § 1522, adequately balance the parties' respective interests. . . . For these reasons, the matter must be remanded[.]"); *In re Treco*, 240 F.3d at 160–61 (overturning bankruptcy court order granting discretionary relief under the statutory predecessor to chapter 15 without first determining that Bahamian law, as applied on those specific facts, would satisfy one of the § 304(c) (now § 1507(b)) factors).

**B. The Bankruptcy Court Abused its Discretion in Granting Full Force and Effect to Orders it Had Never Seen**

The Bankruptcy Court also erred in granting full force and effect ("FFE") to "the BVI Orders, and any other orders entered by the BVI Court in the BVI Proceedings as of the date of [the Recognition Order]." [JA-6768 ¶ 20].

Entry of an FFE order requires the Bankruptcy Court to balance the impact of FFE relief for that particular foreign order against the benefit of the same to the foreign representatives. *See Collins v. Oilsands Quest, Inc.*, 484 B.R. 593, 596–97 (S.D.N.Y. 2012) ("[T]he statutory imperative that the [c]ourt shall grant comity or cooperation does not mean that the [c]ourt must enforce every order entered into by the [foreign] [c]ourt[.]"); *In re Rede Energia S.A.*, 515 B.R. 69, 93–94 (Bankr. S.D.N.Y. 2014) (referencing the foreign representative's burden with respect to the balancing test for FFE relief). In his objections, Borrelli noted that the JPLs appeared to be seeking FFE for orders that had been obtained *ex parte* in the BVI that had not been presented to the Bankruptcy Court, including a May 29, 2026 sealed order that Borrelli had not seen. [JA-6644 ¶ 22]; [JA-5257 ¶ 11]. In granting FFE to all BVI orders entered as of the date of the June 18, 2026 Recognition Order, the Bankruptcy Court found that Borrelli "does not identify any orders that have not been submitted to the Court for which the JPLs seek recognition." [JA-6761]. This was wrong, because Borrelli had identified a secret May 29, 2026 BVI order. It also turns the standard on its head, because it was the JPLs' burden to identify the orders for which they were seeking FFE. *In re Rede Energia S.A.*, 515 B.R. at 93–94. Accordingly, the Recognition Order should be reversed to the extent it grants FFE to "any other orders entered by the BVI Court" as of June 18, 2026.

### C. The Bankruptcy Court Abused its Discretion in Granting Blanket Discovery Powers

The Recognition Order grants the JPLs broad, blanket authorization to take discovery (including by issuing subpoenas) from any entity without further review by the court. [JA-6768 ¶ 19]. That kind of blanket discovery authorization is not permitted in chapter 15 because, without knowing the discovery target, a court cannot consider the burdens imposed on it by the discovery authorization or balance those burdens against the benefits. Section 1522(a) authorizes relief under § 1521—which includes discovery under § 1521(a)(4), as authorized in the Recognition Order—only where "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a); *see also In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 69 n.7 (Bankr. S.D.N.Y. 2011) (finding the right to obtain discovery after recognition is afforded by § 1521(a)(4)). And § 1521(a) imposes its own limits: that the relief be "necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors" and "appropriate." 11 U.S.C. § 1521(a). Here, the Bankruptcy Court abused its discretion in pre-authorizing discovery on any target without first determining whether the JPLs satisfied the applicable tests under §§ 1522 and 1521. Indeed, no court can pre-apply balancing tests to discovery demands it has never seen. *Cf. In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 447 (Bankr. S.D.N.Y. 2022) (authorizing specific discovery requests only because "[a]t

the hearing, the [c]ourt was satisfied that the scope of the subpoenas and relief sought in the [s]ubpoena [m]otion was appropriate"); *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 812 (Bankr. S.D.N.Y. 2018) (authorizing target-specific discovery under § 1521(a)(4) only after finding that the "necessary and appropriate" test of § 1521(a) was satisfied).[10]

### D. The Bankruptcy Court Abused its Discretion in Failing to Consider the Costs of the BVI Proceedings Borne by the Debtors

The Bankruptcy Court also abused its discretion in entering discretionary relief without considering the interests of the Debtors themselves. Under BVI law, the Debtors bear the cost of these ongoing provisional liquidations, including the fees of the JPLs and multiple U.S. and foreign law firms. The Debtors do not get to see the total fees accruing against them or invoices detailing the justification for those fees. There is no opportunity, as there would be in the United States, for parties-in-interest to monitor fees or contest whether particular work was necessary. The Debtors do not know, for example, if they are being charged for time spent on three different versions of the JPLs' § 1519 Motion and the letter to the Bankruptcy Court retracting one of those three for AI hallucinations. *See* [JA-2759–63]. These costs are relevant to a balancing test under § 1522, and the Bankruptcy Court abused its discretion by declining to take them into account. *Qimonda II*, 737 F.3d at 27 ("[I]t

[10] The risks of pre-authorizing discovery are demonstrated by the sweeping subpoena the JPLs have served on Borrelli's attorneys, which seeks a remarkably broad swath of documents with no consideration of the burden such a subpoena places on the attorneys or their client. *See* [ECF No. 21-6].

was incumbent on the bankruptcy court [] to consider whether the 'interests of . . . the debtor, [would be] sufficiently protected' under § 1522(a)"); *In re Treco*, 240 F.3d at 158–61 (finding bankruptcy court abused its discretion by affording comity to Bahamian bankruptcy proceeding under chapter 15 predecessor without considering effects on objecting party).

## IV. THE COURT SHOULD DENY RECOGNITION AND DISCRETIONARY RELIEF UNDER 11 U.S.C. § 1506

Section 1506 provides that "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by [chapter 15] if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. The test applies to recognition as well as all discretionary relief. *In re ARD Fin., S.A.*, 678 B.R. at 734. This public policy requirement "is an integral limitation on a court's authority to grant comity to foreign courts and foreign proceedings[.]" *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011).

Recognition or discretionary relief fail to survive § 1506 on either one of two grounds: (1) "whether the foreign proceeding was procedurally unfair;" or (2) whether "recognition of a foreign main proceeding under [c]hapter 15 would 'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights." *Qimonda I*, 433 B.R. at 568–69; *In re Canterbury Sec., Ltd.*, 675 B.R. 109,

119–20 (S.D.N.Y. 2025) (same). The BVI Proceedings and the relief granted by the Recognition Order fail under both because the BVI Proceedings have been marred by unjustified secrecy, the JPLs have shifted positions between the BVI Court and the Bankruptcy Court, and the Bankruptcy Court ignored basic due process principles in characterizing Borrelli's objections as improper "interference" with these proceedings.[11]

### A. The Actions of the JPLs Have Rendered the BVI Proceedings Procedurally Unfair

A foreign proceeding should not be afforded deference "where the procedural fairness of the foreign proceeding is in doubt or cannot be cured by the adoption of additional protections." *Qimonda I*, 433 B.R. at 570. *See also In re Toft*, 453 B.R. at 196–97 (denying discretionary relief that would amount to authorizing *ex parte* wiretapping in violation of "comprehensive statutory protection in the United States" for electronic communication privacy); *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ("The key determination required . . . is whether the procedures used in [the foreign proceeding] meet our fundamental standards of fairness.").

[11] Decisions under § 1506 are reviewed for abuse of discretion. *See Qimonda I*, 433 B.R. at 564 ("[T]he [b]ankruptcy [c]ourt's decision to grant comity is reviewed for an abuse of discretion, which occurs when a court 'fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of legal or factual misapprehensions respecting those factors.'"). Any legal conclusions interpreting § 1506, however, are reviewed *de novo*. *See id*. at 555.

First, the BVI Proceedings have been tainted with unnecessary secrecy. Following their *ex parte* appointment, the JPLs engaged in further *ex parte* contacts with the BVI Court, including filing sealed reports. *See, e.g.*, [JA-4635 ¶ 2]; [JA-4638–39 ¶¶ 3–5]. These sealed filings run afoul of basic notions of due process under U.S. law. *See In re Cozumel Caribe, S.A. de CV*, 482 B.R. 96, 116 (Bankr. S.D.N.Y. 2012) ("Due process is not violated by the entry of *ex parte* orders, *provided that notice and an opportunity to appear and defend are promptly given*." (emphasis added)). Indeed, they appear to contain the JPLs' own gloss on proceedings in the Bankruptcy Court and elsewhere that have been submitted to the same BVI judge considering the Debtors' objections to the liquidation proceedings with no opportunity for the Debtors to respond. *See id.*

Second, the JPLs have engaged in procedural gameplay by telling different stories to different courts and engaging in strategic conduct to exploit differences in the U.S. and BVI legal systems—conduct not tolerated in cross-border insolvency. *See In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) (declining to countenance "strategic conduct" that played insolvency proceedings in different jurisdictions against another); *Collins*, 484 B.R. at 597 (cautioning against encouraging strategic conduct in cross-border insolvency). For example, in applying for a ruling that Borrelli's residuary powers did not extend to directing the Debtors to object to the chapter 15 proceeding, the JPLs showed the BVI Court the draft recognition order

they submitted to the Bankruptcy Court, emphasizing that they were seeking only plain recognition, and nothing more. [JA-4497:13–4498:13] (showing the BVI Court the draft order and emphasizing that plain recognition is "what's been sought"). The BVI Court relied on this in granting the JPLs an order barring Borrelli from directing Debtor opposition to recognition in the United States:

> THE BVI COURT: If we can go back to that [proposed chapter 15 order] and see what kind of applications it has in mind there because what I am focusing on right now is that what the JPLs want to do in the U.S. is apply to have these BVI proceedings recognised in the U.S. and have their offices recognised in the U.S. That is the JPLs' application in the U.S., is it not?
>
> [COUNSEL TO THE JPLS]: It is.
>
> THE BVI COURT: It's not for something more fancy. It is just for recognition . . . .

[JA-4516:3–13]. Shortly after obtaining that ruling from the BVI Court on May 14, 2026, the JPLs on June 1, 2026, filed a revised draft order with the Bankruptcy Court seeking expanded powers, including powers that exceeded their BVI law authority and ran contrary to their mandate to preserve the status quo. *See* [JA-5293–5300].

The JPLs' strategic conduct further includes asking the BVI Court to adjudicate the validity of Borrelli's appointment as the director of the Debtors, withdrawing that request when the Borrelli Debtors moved to strike it, and then launching that same argument in foreign courts less equipped to resolve that BVI law question. *See* [ECF No. 20 at 11 n.7]; *In re Atlas Shipping A/S*, 404 B.R. 726,

745 (Bankr. S.D.N.Y. 2009) (declining to "countenance . . . blatant gamesmanship" where litigant sought to play off Danish and U.S. courts to its advantage). Still more gamesmanship surfaced when the JPLs represented to the BVI Court that they had no objection to Borrelli appearing in his own capacity before the Bankruptcy Court, but then promptly challenged his standing in the Bankruptcy Court once he objected to the chapter 15 cases. This is the precise conduct courts have warned against. *See In re Condor Ins. Ltd.*, 601 F.3d 319, 326 (5th Cir. 2010) ("When courts mix and match different aspects of bankruptcy law, the goals of any particular bankruptcy regime may be thwarted.").

Similarly, the JPLs have moved between jurisdictions to obtain relief they could not have obtained from one jurisdiction alone. The JPLs were appointed based on allegations in U.S. criminal and civil forfeiture proceedings. That is not sufficient in the U.S. to nationalize thirty companies. But those U.S. proceedings were sufficient in the BVI to commence *ex parte* provisional liquidations. The powers granted in those Appointment Orders were limited, conservational, and came with guardrails. The JPLs then amplified those powers and skirted those guardrails by coming *back* to the U.S. to obtain recognition. The "end result," which may include the Debtors filing for chapter 11,[12] is "contrary to the result that either system applied alone would have reached." *Id.*; *In re Fairfield Sentry Ltd.*, 147 F.4th 136, 160 (2d

[12] *See* [JA-3260:22–23] (JPLs' COUNSEL: "[I]t may be possible that the right answer here is a Chapter 11 case[.]").

Cir. 2025) (agreeing with district court that foreign liquidators should not "have it both ways—benefiting from [one forum] . . . while trying to avoid the limitations [that the forum's laws] imposes on their power").

Third, the JPLs are seeking to bar lawful opposition in courts across the globe by asserting that no one has standing to oppose them or their recognition and characterizing any such opposition in court as "interference." *See* [JA-6557–65]; *see also* [ECF No. 21-3, 21-4, & 21-5]. The Bankruptcy Court erred in adopting that view, pointing to recognition objections filed in the Bankruptcy Court as the factual basis for its broad discovery order. [JA-6761] (granting blanket discovery authorization on the grounds that "[t]he JPLs have provided evidence that actors related to Mr. Chen have taken steps to interfere with the recognition of the BVI Proceedings"). It cannot be that, by filing objections to recognition and discretionary relief, Borrelli has given the Bankruptcy Court the basis to overrule his objections. Filing objections in courts of law is not "interference." It is due process.

### B. Recognition and the Authorized Discretionary Relief Impinge the Value and Import of U.S. Statutory Rights

The BVI Proceedings and the relief granted by the Recognition Order also impinge on the value and import of U.S. statutory rights. *See In re Canterbury Sec., Ltd.*, 675 B.R. at 118–19 (distinguishing § 1506 cases that implicated "U.S. law"). A range of U.S. policies can trigger denial under § 1506; it is not limited to constitutional concerns. *See, e.g.*, *In re Qimonda AG*, 462 B.R. 165, 169 (E.D. Va.

2011) (finding recognition of German insolvency proceeding manifestly contrary to public policy because, "in the context of the semiconductor industry," allowing semiconductor manufacturer debtor to reject its U.S. patent licenses would "adversely threaten U.S. public policy favoring technological innovation."); *Qimonda II*, 737 F.3d at 32 (recognizing "the public policy inherent in and manifested by § 365(n)" of the Bankruptcy Code, which protects intellectual property licensees); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 371–73 (Bankr. E.D.N.Y. 2009) (recognizing the public interest in "the automatic stay" under the Bankruptcy Code); *see also In re Treco*, 240 F.3d at 158–61 (concluding that, in § 304 proceeding, policy concerns precluded granting comity to Bahamian liquidation that treated bankruptcy costs and secured claims differently than the Bankruptcy Code).

The BVI Proceedings implicate two important policies enshrined in the Bankruptcy Code, which are among those implicated by § 1506. *See, e.g.*, *In re Vitro, S.A.B. de C.V.*, 473 B.R. 117, 132 (Bankr. N.D. Tex. 2012) (barring recognition pursuant to § 1506 because "the protection of third party claims in a bankruptcy case is a fundamental policy of the United States" enshrined in the Code and "the plan [at issue] does not recognize and protect such rights"); *In re Gold & Honey*, 410 B.R. at 372 (barring recognition pursuant to § 1506 where foreign proceeding violated

automatic stay, which enshrines "fundamental policies and purposes" of U.S. bankruptcy law).

First, secrecy around the JPLs' total fees compromises the interest of U.S. bankruptcy law of fee transparency for estate professionals. A litany of U.S. code sections and U.S. Trustee regulation protect debtors and their stakeholders from excessive billing practices by mandating detailed public filings by estate professionals, subject to scrutiny and objection by all parties. *See, e.g.*, 11 U.S.C. §§ 328, 329, & 330(a)(3). The JPLs in this case claimed that they could not share details of their work with Borrelli because their investigations were secret. *See* [JA-4698–99] (Request Nos. 23–24). But even if that is true, it is no reason to hide dollar figures accrued by Interpath and the many law firms engaged by the JPLs on the Debtors' dime, whether by category or in aggregate.

Second, the BVI Proceedings impinge on the value and import of U.S. law restrictions on involuntary bankruptcy. In the United States, the government cannot nationalize thirty companies on the back of a criminal indictment of a shareholder. Trial and other formal processes are required before properties can be seized. And U.S. law differentiates between criminal law and government investigations, on the one hand, and bankruptcy cases, on the other. Bankruptcy is a private remedy between private parties. The Bankruptcy Code does not allow the government to commence involuntary chapter 11 cases merely to grab property. *See* 11 U.S.C.

§ 303(b)(1) (requiring for involuntary bankruptcy at least three creditors holding bona fide claims).

But that is what the BVI AG has done here. [JA-3829:13–16] (COUNSEL TO BVI AG: "[J]ust make it absolutely clear, for purposes of this hearing we are not seeking to, and we would not be in a position, to prove the allegations."). That should trouble this Court, just as it troubles the BVI Court:

> Do these Companies that are now being put up against the wall to be finished off, does the evidence stack up for finishing off those Companies? And just because somebody said in an overseas Court that there's a man called Chen out there who has been successfully indicted, then is that enough to finish these Companies off?

[JA-3857:9–15].

## V. THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT FUNDS HELD BY THE JPLS' LAWYERS IN THE JPLS' CLIENT-TRUST ACCOUNT ARE PROPERTY OF THE DEBTORS

In concluding that "the S&C Retainer *appears* to satisfy section 109(a) of the Code," [JA-6613] (emphasis added), the Bankruptcy Court erred in finding that "[t]he Debtors' principal asset in the United States is the S&C Retainer, which is held in an S&C client trust account and each Debtor possesses a ratable interest in it." [JA-6612]. This is wrong because the funds belong to Interpath, not the Debtors.

Section 109(a) is a mandatory condition of U.S. debtor eligibility. *In re Barnet*, 737 F.3d 238, 246–51 (2d Cir. 2013). It provides that "only a person that resides or has a domicile, a place of business, or property in the United States" may

be a debtor under the Bankruptcy Code. 11 U.S.C. § 109(a). The JPLs bear the burden of establishing eligibility. *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000). They submitted that the sole basis for the Debtors' § 109(a) eligibility was the JPLs' client retainer account, held by the JPLs' lawyers, S&C. [JA-37 ¶¶ 16–17].

Whether something constitutes an interest of a debtor in property for purposes of the Code is a legal question reviewed *de novo*. *In re Hernandez*, 483 B.R. 713, 719 (9th Cir. B.A.P. 2012). Fact findings made by the Bankruptcy Court to support that conclusion are reviewed for clear error.

In support of their § 109(a) theory, the JPLs pointed the Bankruptcy Court to cases holding that funds held as a retainer *by a debtor's lawyers* constitute debtor property for purposes of § 109(a). [JA-37 ¶ 17]. But S&C is not the Borrelli Debtors' lawyer; it represents the JPLs. *See* [JA-32 & 35–36 ¶ 10] (identifying S&C as counsel to the JPLs); [JA-4086:6–16] (JPL Paul Pretlove agreeing that S&C was "your law firm" in the chapter 15 cases); [JA-4765:3–18] (JPLs' expert (and BVI lawyer) testified that S&C acts for each of the JPLs); [JA-5305 ¶ 2] (JPLs' counsel confirming S&C represented each of the JPLs). Funds held in S&C's client trust accounts belong to S&C's clients. They do not belong to a third party.

The Bankruptcy Court ignored this distinction in relying on cases where the same lawyers representing the foreign representative also represented the debtor.

[JA-6613–14]. Specifically, the Bankruptcy Court quoted *In re Global Ocean* for the proposition that "[i]t is not relevant who paid the retainer, so long as the retainer is meant to cover *the fees of the attorneys for all the Debtors*." 251 B.R. at 39 (emphasis added). But the S&C retainer is meant to cover S&C's fees for the JPLs. It is not meant to cover the fees of the Debtors' attorneys.

Likewise, in *In re JPA No. 111 Co.*, § 109(a) was satisfied where funds paid by a debtor's affiliate into the *debtor's client retainer account* held with *debtor's bankruptcy counsel* constituted debtor property. 2022 WL 298428, at *5–6 (Bankr. S.D.N.Y. Feb. 1, 2022). But again, S&C is not the Debtors' bankruptcy counsel. The firm represents the JPLs, who are *adverse* to the Debtors—the Debtors have been litigating against the JPLs in the BVI since January, arguing that the JPLs should not have been appointed. [JA-4396–4411]. The Bankruptcy Court thus erred in finding that the Debtors have an interest in the S&C retainer sufficient to qualify under § 109(a).

Nor could the JPLs explain how their $25,000 in funds became the property of a third party when they sent that money to their lawyers. *See* [JA-4176:7–4177:22; 4245:7–4246:17] (noting the funds sent to S&C came from Interpath, the JPLs' advisory firm). Pretlove testified that Interpath's payment was neither a gift nor a loan to the Debtors. *See* [JA-4187:23–4188:8; 4249:7–18]. At most, as Pretlove conceded in his deposition, Interpath would be entitled under BVI law to apply to

the BVI Court for sanction to charge the $25,000 retainer to the estates as an expense of the liquidation. *See* [JA-4178:4–20; 4188:6–25; 4248:12–4249:18]. But the JPLs' claim for reimbursement is a *contingent liability* of the Debtors, pending the BVI Court's sanction of the JPLs' fees and expenses under § 430 of the BVI Insolvency Act. It is not an *asset*, much less *property*, of the Debtors. Obligations of the Debtors do not satisfy § 109(a).

## VI. THE BANKRUPTCY COURT ERRED IN CONCLUDING BORRELLI LACKED STANDING TO OBJECT TO THE CHAPTER 15 PROCEEDINGS

The Bankruptcy Court conducted no meaningful analysis of Borrelli's standing to object as a matter of U.S. law. Its conclusion was confined to a half-sentence at the end of its one-page discussion on BVI law: "The Director lacks standing under BVI law to object to the Chapter 15 Cases *and has failed to identify any legal right of his own that would entitle him to standing before this Court*." [JA-6612] (emphasis added). This incorrect conclusion is subject to *de novo* review. *See In re Commodore Int'l, Ltd.*, 253 B.R. 336, 338 (S.D.N.Y. 2000) ("The question of standing is a matter of law . . . subject to de novo review by this Court."). For the reasons set forth in his Opposition to Appellees' Motion to Dismiss and Stay Proceedings, this Court should reverse the Bankruptcy Court's finding that Borrelli lacks standing to object. [ECF No. 20].

## **CONCLUSION**

For the foregoing reasons, Cosimo Borrelli respectfully requests that this Court reverse the Bankruptcy Court's order and memorandum opinions recognizing the BVI Proceedings and granting discretionary relief and remand for issuance of an order denying recognition of the BVI Proceedings or, alternatively, denying the discretionary relief addressed in this appeal.

Dated: New York, New York
September 2, 2026

Respectfully Submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Peter M. Skinner*

Matthew L. Schwartz
Peter M. Skinner
Gordon Z. Novod
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
mlschwartz@bsfllp.com
pskinner@bsfllp.com
gnovod@bsfllp.com

Dan G. Boyle
2029 Century Park East
Los Angeles, California 90067
Telephone: (213) 995-5732
dboyle@bsfllp.com

*Counsel to Cosimo Borrelli in his capacity as the sole director of each of the Borrelli Debtors*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h) and S.D.N.Y. Local Civil Rule 7.1(d), the undersigned certifies that this brief complies with the typeface requirements set forth in Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-volume limitation set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B). This brief has been prepared in a proportionally spaced typeface in Times New Roman and 14-point font and complies with the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6). Excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g), this brief contains 11,801 words.

*Peter M. Skinner*
Peter M. Skinner

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2026, I served a true and correct copy of the foregoing document on counsel of record via the Court's electronic filing system.

*Peter M. Skinner*
Peter M. Skinner