**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE GLOBAL HOLDINGS LIMITED *et al.*,[1]<br><br>Debtors in Foreign Proceedings. | Chapter 15<br><br>Bankruptcy Case No. 26-10769 (KYP)<br><br>(Jointly Administered) |
| COSIMO BORRELLI,<br><br>Appellant,<br><br>-against-<br><br>PAUL PRETLOVE, DAVID STANDISH, and JAMES DRURY,<br><br>Appellees. | Case No. 1:26-cv-05279 (VEC)<br><br>On Appeal from the United States Bankruptcy Court for the Southern District of New York |

**BRIEF OF APPELLEES PAUL PRETLOVE, DAVID STANDISH, AND JAMES DRURY IN THEIR CAPACITIES AS AUTHORIZED FOREIGN REPRESENTATIVES OF PRINCE GLOBAL HOLDINGS LIMITED ET AL.**

[1] The Debtors in the above-captioned Chapter 15 cases are incorporated in the British Virgin Islands (the "BVI") and maintain their registered address at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG1110. A complete list of the Debtors and their company numbers may be found at ECF No. 2-1 in *In re Prince Global Holdings Limited et al.*, Case No. 26-10769 (KYP) (Bankr. S.D.N.Y.).

# TABLE OF CONTENTS


STATEMENT ON ORAL ARGUMENT .....1

INTRODUCTION .....1

BACKGROUND .....7

I. INTERNATIONAL AUTHORITIES TAKE ACTION AGAINST CHEN ZHI AND THE PRINCE GROUP .....7

II. THE BVI ATTORNEY GENERAL SEEKS THE DEBTORS' LIQUIDATION, AND THE BVI COURT APPOINTS THE AFRs, DISPLACING CHEN ZHI'S CONTROL .....8

III. APPELLANT CLAIMS AUTHORITY OVER TWENTY-FIVE DEBTORS AFTER THE AFRs' APPOINTMENT .....10

IV. THE AFRs SEEK CHAPTER 15 RECOGNITION, AND THE BANKRUPTCY COURT GRANTS IT OVER APPELLANT'S OBJECTION .....10

SUMMARY OF ARGUMENT .....13

STANDARD OF REVIEW .....13

ARGUMENT .....14

I. APPELLANT HAS FAILED TO ESTABLISH STANDING BEFORE THE BANKRUPTCY COURT AND THIS COURT .....14

A. Appellant Is Not a "Person Aggrieved" and Cannot Maintain This Appeal .....14

B. The Bankruptcy Court Correctly Held That Appellant Lacked Standing to Oppose Recognition Before It .....18

II. THE BANKRUPTCY COURT DID NOT ERR IN GRANTING RECOGNITION TO THE BVI PROCEEDINGS .....19

A. The BVI Proceedings Are "Foreign Proceedings" Under Section 101(23) .....20

1. The BVI Proceedings Are for the Purpose of Liquidation ..... 20

2. The BVI Proceedings Are Collective .................................... 27

B. The Bankruptcy Court Correctly Held That Each Debtor's Interest in the S&C Retainer Satisfies Section 109(a) ....................................30

1. Appellant Identifies No Clear Error in the Bankruptcy Court's Findings Concerning the Retainer Arrangement ........ 32

2. S&C's Representation of the AFRs Does Not Affect the Debtors' Interests in the Retainer .......................................... 34

3. Neither Interpath's Funding Nor Possible Reimbursement Removes the Debtors' Interests in the Retainer ...................... 35

III. THE BANKRUPTCY COURT PROPERLY TAILORED AND GRANTED DISCRETIONARY RELIEF ..................................................37

A. Paragraph 19 Properly Authorizes Discovery and Orders No Turnover of Foreign Assets.............................................................38

B. Paragraph 20 Properly Gives Domestic Effect to the BVI Court Orders ..........................................................................................40

C. Paragraph 21 Properly Bars Unauthorized Acts on the Debtors' Behalf ..........................................................................................41

1. Paragraph 21 Prevents Confusion About Whom a Party Represents While Preserving Independent Claims.................. 41

2. Chapter 15 Authorizes Relief Protecting the AFRs' Recognized Authority ........................................................ 42

3. Appellant's Injunction Argument Misreads Section 1521(e) and the Record ............................................................... 45

D. The Bankruptcy Court Protected the Interests Affected by Its Relief ............................................................................................47

1. The Bankruptcy Court Performed the Required Balancing..... 47

2. Appellant's Own Objection Refutes His Claim That Fees Escape Review ........................................................... 48

E. Any Correction Should Preserve Recognition and the Order's Unaffected Provisions ....................49

IV. APPELLANT IDENTIFIES NO MANIFEST CONFLICT WITH U.S. PUBLIC POLICY ....................49

A. The Record Refutes Appellant's Claim of Fundamental Procedural Unfairness ....................50

1. The BVI Court Heard the Borrelli Debtors' Objections and Expressly Stated That It Would Not Rely on Undisclosed Evidence .................... 50

2. The AFRs' Positions Were Not "Gamesmanship," and the Bankruptcy Court Considered Appellant's Objections ........... 51

B. The BVI Fee Oversight Process and the BVI AG's Initiation of the Proceedings Do Not Violate Any Fundamental U.S. Policy ..............53

1. The AFRs' Fees Are Subject to Judicial Determination ......... 53

2. Appellant's Section 303 Theory Misapplies Domestic Filing Requirements .................... 54

CONCLUSION ....................56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allianz Ins. Co.* v. *Lerner*,
416 F.3d 109 (2d Cir. 2005) ....................................................................50, 53

*Anderson* v. *City of Bessemer City*,
470 U.S. 564 (1985)...............................................................................14, 33

*In re Archetype Invs. Fund SPC Ltd.*,
No. 19-11996 (SHL) (Bankr. S.D.N.Y. July 23, 2019)....................................43

*In re ARD Fin., S.A.*,
678 B.R. 711 (Bankr. S.D.N.Y. 2026)........................................................42, 50

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012) ....................................................................*passim*

*In re B.C.I. Fins. Pty Ltd.*,
671 B.R. 669 (Bankr. S.D.N.Y. 2025)...............................................................31

*In re Bally Total Fitness of Greater N.Y., Inc.*,
2009 WL 1116587 (Bankr. S.D.N.Y. Mar. 27, 2009)........................................37

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ....................................................................*passim*

*In re Berau Cap. Res. Pte Ltd.*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015)..................................................................35

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009)...........................................................20, 26

*In re British Am. Ins. Co.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) .........................................................22, 29

*In re CBI Holding Co.*,
529 F.3d 432 (2d Cir. 2008) ......................................................................13, 47

*Collins* v. *Oilsands Quest Inc.*,
484 B.R. 593 (S.D.N.Y. 2012) .........................................................................41

*In re Comair Ltd.*,
2023 WL 1971618 (Bankr. S.D.N.Y. Feb. 12, 2023)....................................22, 28

*In re Cozumel Caribe, S.A. de C.V.*,
482 B.R. 96 (Bankr. S.D.N.Y. 2012)..............................................................50

*In re DBSD N. Am., Inc.*,
634 F.3d 79 (2d Cir. 2011) ......................................................................14, 15

*In re D.H. Overmyer Co.*,
510 F.2d 329 (2d Cir. 1975) ...........................................................................47

*In re Digicel Group One Ltd.*,
No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) ....................................22

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ...............................................................39, 44

*In re Fairfield Sentry Ltd.*,
714 F.3d 127 (2d Cir. 2013) ..........................................................31, 50, 51, 53

*In re Fleming Int'l Reinsurance Ltd.*,
No. 25-12353 (JPM) (Bankr. S.D.N.Y. Nov. 20, 2025)..............................22, 40

*In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*,
607 B.R. 160 (Bankr. S.D.N.Y. 2019)..............................................................35

*Gasson* v. *Premier Capital, LLC*,
43 F.4th 37 (2d Cir. 2022) .............................................................................32

*In re Gerova Fin. Grp., Ltd.*,
482 B.R. 86 (Bankr. S.D.N.Y. 2012)..............................................................55

*In re Glob. Ocean Carriers Ltd.*,
251 B.R. 31 (Bankr. D. Del. 2000). ................................................................36

*In re Glob. Cord Blood Corp.*,
2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022) ........................4, 21, 25, 30

*In re Hernandez*,
483 B.R. 713 (B.A.P. 9th Cir. 2012) ..............................................................33

*Jaffe* v. *Samsung Electronics Co.*,
737 F.3d 14 (4th Cir. 2013) ....................................................................14

*In re Johns-Manville Corp.*,
843 F.2d 636 (2d Cir. 1988) ....................................................................14

*JP Morgan Chase Bank* v. *Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ....................................................................40

*In re JPA No. 111 Co., Ltd.*,
2022 WL 298428 (Bankr. S.D.N.Y. Feb. 1, 2022)...........................................36

*In re JSC BTA Bank*,
434 B.R. 334 (Bankr. S.D.N.Y. 2010)........................................................43, 44

*In re KG Manhattan 126 Fin. Ltd.*,
No. 21-11080 (MEW) (Bankr. S.D.N.Y. July 14, 2021) ..................................39

*Mar-Bow Value Partners, LLC* v. *McKinsey Recovery & Transformation Servs. U.S., LLC*,
469 F. Supp. 3d 505 (E.D. Va. 2020) ..........................................................17, 18

*In re MIE Holdings Corp.*,
No. 22-10216 (JLG) (Bankr. S.D.N.Y. Apr. 21, 2022)....................................22

*In re Millard*,
501 B.R. 644 (Bankr. S.D.N.Y. 2013)............................................................26

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008) ......................................................................50

*In re Nortel Networks UK Ltd.*,
538 B.R. 699 (Bankr. D. Del. 2015)...............................................................45

*In re Northeast Ins. Co. Ltd.*,
No. 25-12275 (MEW) (Bankr. S.D.N.Y. Nov. 17, 2025) .................................22

*In re OAS S.A.*,
533 B.R. 83 (Bankr. S.D.N.Y. 2015)...............................................................50

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017)............................................................22

*In re Octaviar Admin. Pty Ltd.*,
511 B.R. 361 (Bankr. S.D.N.Y. 2014)....31, 35

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020)....22, 42, 45

*In re PDV Insurance Co., Ltd.*,
No. 18-12216 (MEW) (Bankr. S.D.N.Y. Aug. 30, 2018)....22

*In re Platinum Partners Value Arbitrage Fund L.P.*,
583 B.R. 803 (Bankr. S.D.N.Y. 2018)....39

*In re Qimonda AG Bankr. Litig.*,
433 B.R. 547 (E.D. Va. 2010)....47, 48, 49

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014)....37, 40, 43

*In re Refco Inc.*,
505 F.3d 109 (2d Cir. 2007)....18

*In re Revlon, Inc.*,
2024 WL 642962 (S.D.N.Y. Feb. 15, 2024)....14, 16

*In re Spencer Capital Holdings Ltd.*,
No. 20-12287 (JLG) (Bankr. S.D.N.Y. Nov. 24, 2020)....22

*In re Suntech Power Holdings Co.*,
520 B.R. 399 (Bankr. S.D.N.Y. 2014)....22

*In re Three Arrows Cap., Ltd.*,
647 B.R. 440 (Bankr. S.D.N.Y. 2022)....38

*In re Treco*,
240 F.3d 148 (2d Cir. 2001)....14, 48, 49, 55

*U.S. Bank National Ass'n* v. *Village at Lakeridge, LLC*,
583 U.S. 387 (2018)....14, 32

*In re Vitro S.A.B. de C.V.*,
701 F.3d 1031 (5th Cir. 2012)....43

**Statutes**

11 U.S.C. § 101 .......... *passim*

11 U.S.C. § 105 .......... 43

11 U.S.C. § 109 .......... *passim*

11 U.S.C. § 303 .......... 7, 54, 55

11 U.S.C. § 304 .......... 14

11 U.S.C. § 363 .......... 6, 47

11 U.S.C. §§ 328–330 .......... 7, 50, 53

11 U.S.C. § 1501 .......... 55

11 U.S.C. § 1506 .......... *passim*

11 U.S.C. § 1507 .......... 37, 43

11 U.S.C. § 1515 .......... 19

11 U.S.C. § 1517 .......... *passim*

11 U.S.C. § 1519 .......... 10

11 U.S.C. § 1520 .......... 43, 44

11 U.S.C. § 1521 .......... *passim*

11 U.S.C. § 1522 .......... *passim*

BVI Insolvency Act § 159 .......... 21

BVI Insolvency Act § 160 .......... 21

BVI Insolvency Act § 162 .......... 9, 21, 30

BVI Insolvency Act § 165 .......... 29

BVI Insolvency Act § 167 .......... 21

BVI Insolvency Act § 170 .......... 9, 22, 26

BVI Insolvency Act § 171 ....................23

BVI Insolvency Act § 172 ....................48, 54

BVI Insolvency Act § 173 ....................22

BVI Insolvency Act § 178 ....................28

BVI Insolvency Act § 179 ....................28

BVI Insolvency Act § 183 ....................28

BVI Insolvency Act § 185 ....................21

BVI Insolvency Act § 207 ....................21, 28, 30

BVI Insolvency Act § 209 ....................28

BVI Insolvency Act § 272 ....................28

BVI Insolvency Act § 432 ....................48, 54

**Other Authorities**

UNCITRAL, *Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation*, Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency (2014) ....................25

**Rules**

Fed. R. Bankr. P. 1012 ....................18, 19

N.Y. Rules of Pro. Conduct R. 1.15 ....................34

## STATEMENT ON ORAL ARGUMENT

Appellees respectfully submit that oral argument is unnecessary because Appellant Cosimo Borrelli lacks standing to maintain this appeal for the reasons set forth herein and in the briefing on Appellees' previously filed *Motion to Dismiss and Stay Proceedings* (the "Motion to Dismiss") [ECF No. 19]. Appellees are prepared to present oral argument should the Court wish to hear it.

## INTRODUCTION

Appellees Paul Pretlove, David Standish, and James Drury, in their capacities as the authorized foreign representatives (collectively, the "Authorized Foreign Representatives" or "AFRs") of Prince Global Holdings Limited and twenty-nine of its affiliates (collectively, the "Debtors"), respectfully submit this brief in opposition to the appeal of Cosimo Borrelli ("Appellant") from the Bankruptcy Court's June 18, 2026 *Order Granting Recognition of Foreign Main Proceedings and Related Relief* (the "Recognition Order") [JA-6764–70], which recognized the Debtors' liquidation proceedings initiated under the British Virgin Islands Insolvency Act (the "BVI Proceedings") before the High Court of Justice of the Eastern Caribbean Supreme Court (the "BVI Court") as "foreign main proceedings" under section 1517(b)(1) of the Bankruptcy Code. [JA-6767 ¶ 15].

The BVI Proceedings concern thirty companies formerly controlled by or otherwise associated with Chen Zhi. The Attorney General of the British Virgin

Islands ("BVI AG") has applied to liquidate those companies, and between January 9 and January 14, 2026, the BVI Court entered thirty substantively identical orders (the "BVI Orders") appointing the AFRs as joint provisional liquidators of the Debtors while the BVI AG's applications remain pending. [JA-153–602].

The circumstances prompting liquidation are extraordinary. U.S. authorities allege that Chen Zhi's Prince Group conglomerate trafficked workers from around the world to Cambodian compounds, where they were forced—often under threat of violence—to perpetrate frauds that stole billions of dollars worldwide. In October 2025, the United States brought criminal charges and sought forfeiture of Bitcoin then worth approximately $15 billion. [JA-68–71 ¶¶ 19–27; JA-3776 ¶ 30(c)]. U.S., U.K., and EU authorities have imposed sweeping sanctions against Prince Group-affiliated entities and individuals, and authorities across Asia have taken coordinated action. Cambodia extradited Chen Zhi to China, where he remains in custody. The central objective of the provisional liquidation is to remove the Debtors and their subsidiaries from the control of Chen Zhi and his associates, place them under the supervision of the AFRs, and empower the AFRs to identify, secure, and preserve the Debtors' assets so that they may be available to compensate legitimate creditors of the Debtors, including victims of the Prince Group's alleged crimes. [JA-76–78 ¶¶ 42–45; JA-4107:25–4108:8; JA-4110:11–22].

Appellant Cosimo Borrelli is an insolvency professional who claims to have become sole director of twenty-five Debtors after the AFRs were appointed. Those purported appointments trace to powers of attorney allegedly granted by Chen Zhi before his arrest. [JA-5334:4–5337:12]. Before accepting his appointments, Appellant communicated with Chen Zhi's counsel. At his deposition, Appellant's counsel blocked questioning about those communications by asserting a common-interest privilege shared with Chen Zhi and other Prince Group associates. [JA-5330:13–5331:9]. Appellant now invokes those asserted directorships to challenge recognition. But Appellant's objections supply no basis to overturn the Bankruptcy Court's grant of recognition.

*First*, Appellant cannot maintain this appeal because the Recognition Order does not directly and adversely affect any pecuniary interest of his. He admits that he owns no shares, holds no beneficial interest, and is not a creditor of any Debtor. He expressly conceded at his deposition that recognition directly affects no property right or pecuniary interest of his own. [JA-5391:8–5396:9]. None of his three theories cures that defect. Paragraph 19's discovery authorization imposes no present obligation or expense on him. Paragraph 21 restricts unauthorized action for the Debtors, but Appellant identifies no personal pecuniary interest it affects, and the BVI Court had already foreclosed the corporate authority he invokes. [JA-6768–69]. Further, a ruling that he lacked standing below cannot itself supply the injury

required for standing on appeal. [JA-6817–18]. As the AFRs' pending Motion to Dismiss explains, this appeal should be dismissed without reaching the merits.

*Second*, the BVI Proceedings satisfy the requirements for recognition. Appellant's repeated observation that the AFRs lack immediate authority to liquidate addresses the wrong question. The BVI AG has already applied for liquidation, and the BVI Court may grant that relief on the pending applications. The U.S. Bankruptcy Code expressly permits recognition of an "interim proceeding." 11 U.S.C. § 101(23). It does not require final liquidators to have been appointed before recognition.

Appellant likewise confuses the grounds for liquidation with its purpose. Public-interest and just-and-equitable considerations explain why the BVI AG applied for liquidation. They do not change the relief provided in a BVI liquidation proceeding. Nor does the Bankruptcy Code require these Debtors to be insolvent. The applications, appointment orders, and governing Protocol[2] establish that investigation and preservation are activities permitted to the AFRs in service of the pending liquidation proceeding. This is not the proceeding considered in *In re Global Cord Blood Corp.*, where winding up remained alternative relief and

---

2 The Protocol for Consultation and Information-Sharing Between the Liquidators and the Attorney General (the "Protocol") forms part of the BVI Orders and expressly ties the AFRs' work to "the integrity of the winding up," while recognizing their "primary duty to protect and realise assets." JA-161–65 §§ 2, 12.

liquidation was not being pursued. 2022 WL 17478530, at *3–4 (Bankr. S.D.N.Y. Dec. 5, 2022). Here, liquidation is the BVI AG's primary request, and the AFRs' court-ordered functions expressly contemplate asset recovery and realization.

The proceedings are also collective. The AFRs already owe duties to creditors as a whole, creditor participation is contemplated, and aggrieved persons may seek judicial intervention. BVI law supplies the procedures for soliciting creditors, determining claims and distributing assets according to statutory priorities. The Bankruptcy Court recognized proceedings directed toward collective recovery for claimants, not merely an investigation for the companies' general benefit.

Each Debtor also satisfies the U.S.-property requirement. The Bankruptcy Court found that Sullivan & Cromwell LLP ("S&C") held a $25,000 retainer in New York ratably for the Debtors. [JA-37 ¶ 16; JA-6818]. Appellant identifies no clear error in that finding, supported by the Verified Petition, S&C's invoice, and Pretlove's testimony. Neither Interpath's contribution of the retainer to the Debtors nor S&C's representation of the AFRs negates the evidence that S&C held the funds for the account of the Debtors. Chapter 15 authorities reject both proposed barriers to eligibility. Nor would an obligation to reimburse Interpath (or pay other Interpath expenses in the future) eliminate the Debtors' existing interests in the deposited funds.

*Third*, Appellant shows no abuse of the Bankruptcy Court's broad discretion to grant "any appropriate relief" under section 1521(a). His "jurisdictional" arguments repeatedly attack relief the Order does not grant. Paragraph 19 permits the AFRs to serve discovery while preserving recipients' objections and judicial review. It orders no turnover of foreign assets. Paragraph 20 properly gives domestic effect to the submitted BVI orders. The Bankruptcy Court assessed those orders and the fairness of the proceedings, found comity warranted, and preserved the orders' safeguards. And Paragraph 21 appropriately protects the Debtors and their controlled subsidiaries against unauthorized acts in their names by persons subject to the Bankruptcy Court's jurisdiction. [JA-6768–69]. The AFRs established the authority Paragraph 21 protects, and the Bankruptcy Court identified concrete threats of asset dissipation and concealment. The narrowed restraint addresses those threats while preserving independent claims and judicial recourse.

The Bankruptcy Court also performed the balancing section 1522 requires. It withheld entry of the Order to consider Appellant's objections, then tailored the relief to protect affected interests. It preserved discovery objections, subjected asset sales to the Bankruptcy Code's sale procedures under section 363, and narrowed Paragraph 21 to preserve independent claims and challenges in the

BVI Proceedings. [JA-6833–39]. Appellant cannot establish a failure to balance by ignoring the changes the Court made in response to his objections.

*Finally*, Appellant's public-policy challenge fails. His new theories invoking U.S. fee-disclosure protections under sections 328–330 and restrictions on involuntary petitions under section 303 are waived. Neither those theories nor his remaining arguments—"unnecessary secrecy," "gamesmanship" or the differences between BVI and U.S. procedures—establish the fundamental procedural unfairness or severe impingement on a U.S. constitutional or statutory right required to invoke section 1506.

The Court should dismiss the appeal for lack of bankruptcy appellate standing. If it reaches the merits, it should affirm the Recognition Order.

## BACKGROUND

### I. INTERNATIONAL AUTHORITIES TAKE ACTION AGAINST CHEN ZHI AND THE PRINCE GROUP

The Debtors are thirty BVI-incorporated holding companies formerly affiliated with the Prince Group, a multinational conglomerate founded and chaired by Chen Zhi. [JA-65 ¶¶ 11–12]. On October 14, 2025, the U.S. Department of Justice (the "DOJ") unsealed an indictment charging Chen Zhi with wire-fraud conspiracy and money-laundering conspiracy in connection with the Prince Group's alleged operations. [JA-68 ¶ 20]. The DOJ also filed a civil forfeiture action seeking approximately 127,271 Bitcoin—then worth roughly $15 billion—alleged to be

traceable to that criminal activity. [JA-70 ¶ 24; JA-3776 ¶ 30(c)]. That same day, the U.S. Department of the Treasury's Office of Foreign Assets Control designated the Prince Group as a Transnational Criminal Organization and, in coordination with the United Kingdom, imposed sanctions on 146 individuals and entities connected to the Prince Group, including twenty-eight of the Debtors. [JA-71–72 ¶¶ 28–30].

The allegations underlying those actions are extraordinary. The indictment and forfeiture complaint allege that, behind ostensibly legitimate real-estate, financial-services, and consumer-services businesses, the Prince Group operated forced-labor "scam compounds" across Cambodia. [JA-66 ¶¶ 14–15]. Trafficked workers allegedly were held under threat of violence and forced to perpetrate cryptocurrency-investment frauds against victims worldwide, including in the United States. [JA-73–75 ¶¶ 33–38]. By December 9, 2025, authorities in six jurisdictions had frozen or seized more than $16 billion in assets connected to Chen Zhi and the Prince Group. [JA-3788 ¶ 23]. The Bankruptcy Court described the Prince Group as "a complicated series of entities that sit atop an empire of fraud and forced labor." [JA-6581].

## II. THE BVI ATTORNEY GENERAL SEEKS THE DEBTORS' LIQUIDATION, AND THE BVI COURT APPOINTS THE AFRs, DISPLACING CHEN ZHI'S CONTROL

On January 5, 2026, the BVI AG commenced proceedings in the BVI Court, seeking to liquidate each Debtor on public-interest and just-and-equitable

grounds under sections 162(1)(b) and (c) of the BVI Insolvency Act. [JA-1072 ¶¶ 5–6; JA-1081 ¶¶ 41–42]. Pending resolution of those applications, the BVI AG also sought the immediate appointment of provisional liquidators under section 170 of the BVI Insolvency Act. [JA-1071–72 ¶ 1]. The BVI AG sought to displace Chen Zhi and his associates with court-appointed officers empowered to preserve the Debtors' assets and investigate past transactions. [JA-3776 ¶ 30(b)]. The ultimate objective of these proceedings was a collective process in which recovered assets could be made available for distribution to legitimate creditors, including victims of the Prince Group's alleged schemes. [JA-3790 ¶ 31(j)].

On January 6, 2026, Chen Zhi was arrested in Cambodia and extradited to China, where he remains in custody. [JA-72–73 ¶ 32]. Between January 9 and January 14, the BVI Court entered the BVI Orders appointing the AFRs as joint provisional liquidators of the Debtors. [JA-153–602]. Those three court-appointed officers later became the AFRs in these Chapter 15 cases. The BVI Orders authorized the AFRs, among other things, to take possession and control of the Debtors' assets, investigate their affairs and transactions, and "commence, continue, discontinue or defend" proceedings "in the name and on behalf of" the Debtors. [JA-157–58 ¶ 3]. The penal notices attached to the BVI Orders stated that the Debtors' directors had been "replaced by the [AFRs]" and could not act in relation to the Debtors' affairs without the AFRs' consent. [JA-155].

## III. APPELLANT CLAIMS AUTHORITY OVER TWENTY-FIVE DEBTORS AFTER THE AFRs' APPOINTMENT

Between February 23 and February 27, 2026—weeks after the BVI Court appointed the AFRs—unidentified attorneys-in-fact, claiming to act under powers of attorney executed by Chen Zhi eight days before his arrest, purported to appoint Appellant as the sole director of twenty-five Debtors (the "Borrelli Debtors"). [JA-3348–49 ¶¶ 8–10]. For nineteen of those companies, Appellant has refused to identify the attorneys-in-fact or produce the powers of attorney through which he claims appointment, asserting privilege over both. [JA-5338:21–5339:20; 5348:8–5351:10]. As to the remaining six companies, Appellant acknowledged that he did not know whether he was their sole director or possessed unilateral authority to act for them. [JA-5427:12–5429:19].

## IV. THE AFRs SEEK CHAPTER 15 RECOGNITION, AND THE BANKRUPTCY COURT GRANTS IT OVER APPELLANT'S OBJECTION

On April 8, 2026, the AFRs commenced these Chapter 15 cases. They sought recognition of the BVI Proceedings as foreign main proceedings under section 1517 of the Bankruptcy Code and provisional relief under section 1519. [JA-37–38 ¶ 18; JA-2772–73 ¶ 14]. On April 16, counsel purporting to represent the Borrelli Debtors objected to provisional relief in the companies' names. [JA-2729–58]. After an April 22 hearing, the Bankruptcy Court granted provisional relief by

opinion dated April 23 and order entered April 30. [JA-3185; JA-3306–08 ¶¶ 11–23].

During the April 22 hearing, the Bankruptcy Court asked the parties to obtain guidance from the BVI Court concerning whether the Borrelli Debtors' directors could cause the companies to oppose recognition. [JA-3249:24–3253:22; JA-3299:13–3300:1]. On May 14, 2026, Justice Wallbank of the BVI Court answered that question: any powers remaining with the Debtors' directors after the AFRs' appointment did "not includ[e] the power to cause a company to appear in foreign recognition proceedings to challenge any application by the [AFRs] for recognition and associated relief." [JA-4622:9–21].

After the BVI Court ruled that Appellant could not cause the companies themselves to oppose recognition, Appellant objected in his own name and in his asserted "capacity as the sole director" of the twenty-five Borrelli Debtors. He filed his initial objection on May 21 and a corrected objection on May 29. [JA-5246]. His deposition, however, confirmed that he had no personal economic stake in the Debtors or in recognition. Appellant testified that he owns no shares of any Debtor, holds no beneficial interest in any Debtor, has no right to any Debtor asset, and is not a creditor. Indeed, he conceded that "no property right or pecuniary interest" of his "is directly affected by Chapter 15 recognition for the Borrelli Debtors." [JA-5396:2–9].

The Bankruptcy Court held the recognition hearing on June 9, 2026. At Appellant's request, the four witnesses—Appellant, Dr. Riz Mokal, Paul Pretlove, and Andrew Barrington Chissick—testified through deposition designations. [JA-5303 ¶ 3]. The recognition evidence was admitted without objection. [JA-6659:15–6660:25]. The Bankruptcy Court asked how it could accept Appellant's asserted status without reviewing the documents that supposedly conferred it: "Ordinarily, I would see the proof, but you've refused to produce it." [JA-6698:17–18].

On June 11, 2026, the Bankruptcy Court issued its Recognition Opinion. It overruled Appellant's objection, recognized the BVI Proceedings as foreign main proceedings, and held that Appellant "lacks standing under BVI law to object to the Chapter 15 Cases and has failed to identify any legal right of his own that would entitle him to standing before this Court." [JA-6580–6618]. On June 18, following further briefing on the form of relief, the Bankruptcy Court issued a Supplemental Opinion and entered the Recognition Order. [JA-6630–47, -6750–63, -6764–70, -6883–87].

Appellant filed his Notice of Appeal that same day, again appearing only "in his capacity as the sole director of each of twenty-five of the Debtors." [JA-6771–74]. On August 14, 2026, the AFRs moved to dismiss the appeal for lack of Article III and bankruptcy appellate standing and to stay merits briefing pending resolution of that threshold motion. [ECF No. 19]. That motion remains pending.

## SUMMARY OF ARGUMENT

Part I explains why Appellant lacks standing, warranting dismissal without reaching recognition. He is not a "person aggrieved" because he concedes that the Recognition Order does not directly affect any pecuniary interest of his own. He cannot cure that defect by invoking alleged injuries to the Debtors. Further, the Bankruptcy Court correctly held that Appellant lacked standing below because he failed to establish that he was a "party in interest" entitled to oppose recognition.

Parts II through IV demonstrate why this Court should affirm the Bankruptcy Court on the merits. The Bankruptcy Court properly granted recognition because the BVI Proceedings serve a liquidation purpose and are collective. The AFRs' provisional appointments are an interim stage of pending liquidation proceedings for all claimants collectively. Nor did the Bankruptcy Court improperly grant discretionary relief: it merely authorized discovery subject to further adjudication of the propriety of any requests; it extended comity to existing BVI orders; and it restrained unauthorized action in the Debtors' name (as Appellant attempts here). Finally, the BVI process does not violate the public policy of the United States.

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *In re CBI Holding Co.*, 529 F.3d 432, 449

(2d Cir. 2008). Clear-error review does not permit the reviewing court to substitute its assessment of the evidence for a permissible assessment by the Bankruptcy Court. *Anderson* v. *City of Bessemer City*, 470 U.S. 564, 574 (1985). Mixed questions do not automatically receive *de novo* review. The standard depends on whether resolution entails predominantly legal or factual work. *U.S. Bank National Ass'n* v. *Village at Lakeridge, LLC*, 583 U.S. 387, 394-96 (2018).

Discretionary relief aiding foreign proceedings is reviewed for abuse of discretion, while questions of statutory interpretation remain subject to *de novo* review. *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001) (applying former § 304); *Jaffe* v. *Samsung Electronics Co.*, 737 F.3d 14, 30-31 (4th Cir. 2013) (reviewing the balancing of interests under § 1522(a)).

## ARGUMENT

### I. APPELLANT HAS FAILED TO ESTABLISH STANDING BEFORE THE BANKRUPTCY COURT AND THIS COURT

#### A. Appellant Is Not a "Person Aggrieved" and Cannot Maintain This Appeal.

As the Second Circuit explained, "if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *In re Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988). A private bankruptcy appellant must show that the challenged order "directly and adversely affected [him] pecuniarily." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013); *In re DBSD N. Am.,*

*Inc.*, 634 F.3d 79, 88-89 (2d Cir. 2011). That standard is stricter than Article III's injury-in-fact requirement. *Barnet*, 737 F.3d at 242. As this Court explained in *In re Revlon, Inc.*, bankruptcy appellate standing imposes a "more exacting" standard that requires an injury that is "direct and financial." 2024 WL 642962, at *3 (S.D.N.Y. Feb. 15, 2024) (quoting *In re DBSD N. Am., Inc.*, 634 F.3d at 89).

Appellant expressly disclaimed any personal stake impaired by the challenged orders. He owns no shares of any Debtor, holds no beneficial interest in any Debtor, has no right to any Debtor asset, and is not a creditor. [JA-5391:8–96:9]. He does not claim that recognition affected any compensation, contractual right, lien, personal claim, or other financial interest of his own. [JA-5368:14-22; JA-5391:9–5394:20; JA-5396:2–5397:20]. Most directly, he conceded that "no property right or pecuniary interest" of his "is directly affected by Chapter 15 recognition for the Borrelli Debtors." [JA-5396:2–9]. Even assuming a valid appointment, his directorship supplies no personal economic stake in the Debtors or recognition. His three asserted grievances do not supply the pecuniary injury he disclaimed.

*First*, the general discovery authorization in Paragraph 19 of the recognition order does not make Appellant a "person aggrieved." *Barnet* rejected materially the same theory. There, the foreign representatives announced their intention to take discovery from directors of Drawbridge affiliates, but the Second

Circuit held that the recognition order did not aggrieve Drawbridge because it "neither name[d] Drawbridge nor direct[ed] any relief against" it. 737 F.3d at 242-43. As the court explained, "[i]t is not the intentions of a litigant that cause pecuniary harm but the relief directed by a Bankruptcy Court," and potential future harm is insufficient. *Id.* at 243. Drawbridge became a "person aggrieved" only after the bankruptcy court entered a separate order directing discovery to Drawbridge. *Id.* at 241, 243-44.

Paragraph 19 permits the AFRs to issue subpoenas without first returning to the Bankruptcy Court. But that changes the procedural sequence, not *Barnet*'s requirement that discovery relief be directed against this appellant. Paragraph 19 does not name Appellant, direct discovery to him, impose any response or production obligation, deadline, or expense on him, or adjudicate his objections. And it expressly preserves each recipient's right to object. [JA-6768 ¶ 19]. No subpoena or discovery request is directed to Appellant. The subpoena to his counsel likewise establishes no personal pecuniary injury: he identifies no resulting expense or other direct financial burden of his own. Opp. to Mot. to Dismiss 7–9 [ECF No. 20]. He therefore relies on precisely the kind of potential future harm that *Barnet* held insufficient. *See Revlon*, 2024 WL 642962, at *4 (quoting *Barnet*, 737 F.3d at 243) ("mere 'potential harm' from a bankruptcy court order is insufficient to justify appellate standing").

*Second*, Paragraph 21 affects no personal pecuniary interest of Appellant's. It merely prevents him from acting "in the name or on behalf of" the Debtors. Appellant's Br. 25. Authority exercised in the name of a corporation belongs to the corporation; it is not the director's personal property. Appellant remains free to act in his own name and assert any personal claim or property right of his own.

The BVI Court's rulings also independently defeat Appellant's specific theory that Paragraph 21 deprived him of corporate authority. Before entry of the Recognition Order, the BVI Court held that the appointment of provisional liquidators ended the directors' authority to act for the Debtors, subject to limited residual authority to challenge the appointments in the BVI, and specifically ruled that directors could not cause the Debtors to oppose foreign recognition. [JA-4608:18–4609:6; JA-156 ¶¶ 1–2]. The corporate authority Appellant invokes was therefore already unavailable under BVI law. Vacating Paragraph 21 would remove the federal injunction, but it would not restore that authority or confer any personal pecuniary right on Appellant.

*Third*, Appellant's claim that the Bankruptcy Court's ruling that he lacked standing itself gives him standing to appeal is circular: that theory would make every unsuccessful objector a "person aggrieved" merely by losing. *See Mar-*

*Bow Value Partners, LLC* v. *McKinsey Recovery & Transformation Servs. U.S., LLC*, 469 F. Supp. 3d 505, 529–30 (E.D. Va. 2020).

### B. The Bankruptcy Court Correctly Held That Appellant Lacked Standing to Oppose Recognition Before It.

Bankruptcy Rule 1012(a) permits a debtor or a party in interest to contest a Chapter 15 petition. Although broader than the "person aggrieved" standard governing appeals, Rule 1012(a) still requires an interest entitling Appellant to object. His insistence that he appeared "in his own capacity as a director" is insufficient. Opp. to Mot. to Dismiss 14 [ECF No. 20]. He invokes powers to protect the Debtors' assets and conduct their affairs for their benefit, not an independent personal interest. Appearing in his own name does not make the Debtors' rights his own. *Cf. In re Refco Inc.*, 505 F.3d 109, 117-18 (2d Cir. 2007) (rejecting an attempt to establish party-in-interest standing through rights belonging to another entity).

Appellant testified that he appeared only as director, not as a creditor or shareholder. [JA-5381:5–15]. He identified no personal property or creditor interest affected by recognition. [JA-5391:8–94:20; JA-5396:2–9]. He identified his ability to fulfill corporate duties, safeguard the Debtors' assets, and avoid their unnecessary risks and costs. [JA-5396:11–97:20]. Those are the Debtors' interests. His duties do not make those interests personal.

The BVI Court's acknowledgment that Appellant could appear personally was conditional. The court expressly conditioned such participation on his possessing "some other kind of interest" sufficient to come within Rule 1012. [JA-6612 (quoting May 14 BVI Hr'g Tr. 208:13-18)]. Appellant identifies no independent interest satisfying that condition.

Even assuming Appellant was validly appointed and remained in office, the BVI Court held that directors' residual powers did not permit them to cause the Debtors to oppose foreign recognition. [JA-6611–12]. The Bankruptcy Court's reliance on that ruling did not improperly give the BVI orders domestic effect before recognition. *See* Opp. to Mot. to Dismiss 13 [ECF No. 20]. It properly applied BVI law to determine Appellant's corporate authority. Appellant has identified neither a personal interest distinct from the Debtors' interests nor authority to assert their rights. The Bankruptcy Court's standing ruling should therefore be affirmed.

## II. THE BANKRUPTCY COURT DID NOT ERR IN GRANTING RECOGNITION TO THE BVI PROCEEDINGS

Subject to section 1506's public-policy exception, recognition as a foreign main proceeding is required when a qualifying foreign proceeding is pending in the country where the debtor has its center of main interests, the applicant is a foreign representative, and the petition satisfies section 1515. 11 U.S.C. § 1517(a), (b)(1). Section 101(23) defines a "foreign proceeding" as a collective judicial or administrative proceeding in a foreign country, including an interim proceeding,

conducted under a law relating to insolvency or adjustment of debt, in which the debtor's assets and affairs are subject to foreign-court control or supervision, for the purpose of reorganization or liquidation. 11 U.S.C. § 101(23). The debtor must also satisfy section 109(a)'s eligibility requirements. *Barnet*, 737 F.3d at 247.

### A. The BVI Proceedings Are "Foreign Proceedings" Under Section 101(23).

Appellant challenges only two of the seven criteria for qualifying as a foreign proceeding under section 101(23): whether the BVI Proceedings serve a reorganization or liquidation purpose and whether they are collective. Appellant's Br. 17-24; *see In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012). The Bankruptcy Court correctly held that both requirements are satisfied. [JA-6819–6821].

#### 1. The BVI Proceedings Are for the Purpose of Liquidation.

Appellant asserts that no winding-up process has commenced and the AFRs lack authority to commence one. Appellant's Br. 21. But the U.S. Bankruptcy Code asks whether the ***proceedings to be recognized*** serve a liquidation purpose. 11 U.S.C. § 101(23); *see In re Betcorp Ltd.*, 400 B.R. 266, 284–85 (Bankr. D. Nev. 2009). The BVI AG has already applied to place the Debtors into liquidation so that their affairs can be "properly investigated and wound up" under court supervision and assets can be recovered to "maximise returns to defrauded investors." [*See, e.g.*,

JA-3780–94 ¶¶ 1–2, 32, 39(b)]. Her supporting skeleton argument likewise calls for liquidation and explains that independent liquidators would enable cross-border asset recovery and ensure proper distribution of recovered assets. [JA-1070–93 ¶¶ 48–49]. The BVI Court may grant liquidation on the pending applications. [JA-893–97 §§ 159(1)(a), 160, 167(1)(a)].

Appellant likewise confuses the grounds for liquidation with the purpose of the proceedings. Appellant's Br. 19-20. The BVI Insolvency Act identifies insolvency, just-and-equitable considerations and the public interest as grounds for appointing liquidators. [JA-894 § 162(1)(a)–(c)]. The BVI AG invokes the latter two grounds to obtain liquidation, as her applications expressly request. [*See, e.g.*, JA-3780–94 ¶¶ 1–2, 32]. Those grounds explain ***why*** the BVI AG seeks liquidation. They do not change the relief sought or displace the statutory process for realizing assets, paying claims, and distributing any surplus to members. [JA-904–12 §§ 185(1), 207(1), (3)].[3]

The AFRs' provisional appointments are an interim stage of the pending liquidation proceedings. BVI law permits provisional appointments while liquidation applications await decision and ordinarily ends those appointments when

3 *Global Cord* did not hold that just-and-equitable grounds categorically preclude recognition. It held that the Cayman statutory framework satisfied the requirement of a law relating to insolvency but determined that the particular proceeding lacked the required liquidation or reorganization purpose. 2022 WL 17478530, at *10–13.

the applications are decided. [JA-898–99 §§ 170(1), 173(2)]. The BVI Orders follow that process. [*See, e.g.*, JA-153–60]. The U.S. Bankruptcy Code expressly includes an "interim proceeding" within its definition of a foreign proceeding, so recognition need not await appointment of final liquidators. 11 U.S.C. § 101(23). Courts in this District have repeatedly recognized qualifying provisional liquidation proceedings.[4]

Appellant's own authority confirms that formal winding up proceedings need not have begun for the purpose requirement to be satisfied. *See In re British Am. Ins. Co.*, 425 B.R. 884, 906 (Bankr. S.D. Fla. 2010) (finding the purpose requirement satisfied after the Bahamian court directed partial reorganization followed by liquidation, including steps "to simplify the eventual winding-up of [the entity]," although formal winding-up proceedings had not yet commenced). Appellant quotes the court's discussion of an earlier stage in that

4 *See In re Olinda Star Ltd.*, 614 B.R. 28, 40–45 (Bankr. S.D.N.Y. 2020); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 701–02 (Bankr. S.D.N.Y. 2017); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416–17 (Bankr. S.D.N.Y. 2014); *In re Comair Ltd.*, 2023 WL 1971618, at *14-16 (Bankr. S.D.N.Y. Feb. 12, 2023), ECF No. 91; *In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM), Recognition Order ¶¶ 2–3 (Bankr. S.D.N.Y. Nov. 20, 2025), ECF No. 39; *In re Northeast Ins. Co. Ltd.*, No. 25-12275 (MEW), Recognition Order at 1, 3–4 (Bankr. S.D.N.Y. Nov. 17, 2025), ECF No. 9; *In re Digicel Group One Ltd.*, No. 20-11207 (SCC), Recognition Order ¶¶ 3–4 (Bankr. S.D.N.Y. June 17, 2020), ECF No. 29; *In re Spencer Capital Holdings Ltd.*, No. 20-12287 (JLG), Recognition Order at 1, ¶ 2 (Bankr. S.D.N.Y. Nov. 24, 2020), ECF No. 16; *In re PDV Insurance Co., Ltd.*, No. 18-12216 (MEW), Recognition Order ¶ 1 (Bankr. S.D.N.Y. Aug. 30, 2018), ECF No. 11. Courts have also recognized scheme proceedings for companies in provisional liquidation. *See In re MIE Holdings Corp.*, No. 22-10216 (JLG), Recognition Order at 1, ¶ 2 (Bankr. S.D.N.Y. Apr. 21, 2022), ECF No. 14.

proceeding, when the judicial manager had not yet submitted the required report recommending liquidation.

The AFRs' court-ordered functions confirm the liquidation purpose. The BVI Orders expressly authorize the AFRs to seek foreign recognition for "securing, realising and remitting assets" to their control, to carry on the Debtors' businesses as necessary for their "beneficial provisional liquidation," and to investigate their affairs as necessary to protect and retrieve assets and records. [*See, e.g.*, JA-157 ¶¶ 3(c), (f), (i)]. The BVI Orders also require implementation of the Protocol governing consultation and information sharing with the BVI AG. [*See, e.g.*, JA-158 ¶ 4]. The incorporated Protocol requires the AFRs to act in the interests of creditors as a whole and "the integrity of the winding up," while also recognizing their "primary duty to protect and realise assets." [*See, e.g.*, JA-161–65 §§ 2, 12].

Further court approval for some powers does not negate the BVI Proceedings' liquidation purpose. Paragraph 2 of the BVI Orders grants the AFRs the rights and powers of a liquidator to the extent necessary to maintain asset value and perform their appointed functions. [*See, e.g.*, JA-156 ¶ 2]; *see also* [JA-899 § 171(1)–(2)]. Paragraph 3 specifies powers exercisable "without further sanction or intervention," and Paragraph 10 expressly excepts those powers from its requirement of court approval for the exercise of the powers under Schedule 2 of the BVI Act. [*See, e.g.*, JA-157–59 ¶¶ 3, 10 ("Save as provided in paragraph 3 above")].

Those provisions govern the AFRs' provisional powers, not the liquidation purpose established by the pending applications and their mandate.

Appellant wrongly equates the BVI AG's acknowledgment that winding up is not inevitable with a disavowal of liquidation as the relief sought. Appellant's Br. 21. The BVI AG has never withdrawn the pending applications or changed the relief requested. At the liquidation hearing, the BVI AG's counsel identified immediate appointment of final liquidators as her "primary case," with continued provisional appointments as the alternative. [JA-3726:17–23]; *see also* [JA-3951:12–3952:7]. When the BVI Court asked whether the BVI Proceedings' purpose was merely to replicate the asset freezes imposed under existing sanctions, the BVI AG's counsel explained that blocking assets was "not the sole or indeed the central purpose" of the BVI Proceedings and described investigation and reporting as part of an orderly process contemplating collection and distribution of assets under court supervision. [JA-3931:11–3933:24]; *see also* [JA-3700:16–3701:4; JA-3714:1–3715:1]. As he explained, "[n]one of that is achieved by the mere act of freezing." [JA-3933:1–24].

The UNCITRAL Guide likewise distinguishes preservation for its own sake from preservation serving liquidation. It explains that proceedings "may" be ineligible when designed to preserve assets "rather than" liquidate or reorganize, including where the representative can do "no more than" preserve assets.

UNCITRAL, *Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation*, Guide to Enactment and Interpretation of the UNCITRAL Model Law on Cross-Border Insolvency ¶ 77 (2014). Here, the preservation and investigation authorized serve the liquidation sought in the pending applications, and the AFRs' powers extend beyond preservation.

That record distinguishes Appellant's principal authority, *Global Cord*, as the Bankruptcy Court correctly determined. [JA-6819–20]. There, a shareholder principally sought corporate-governance relief, with winding up requested only in the alternative. *Glob. Cord Blood Corp.*, 2022 WL 17478530, at *3. The provisional liquidators had authority to commence winding up, but did not contend that liquidation was the proceeding's "current purpose" and sought to avoid it. *Id.* at *10-11. The court held that the mere possibility of a later liquidation (if their asset recovery and corporate-governance efforts failed) did not satisfy § 101(23). *Id.* Here, the BVI AG actively seeks liquidation as her primary relief, and the BVI Orders and Protocol connect the AFRs' provisional work to asset realization and winding up. [JA-3780–94 ¶¶ 1–2, 32; JA-157–58 ¶¶ 3(c), 4; JA-161–65 §§ 2, 12].

Appellant therefore mischaracterizes the Bankruptcy Court's reasoning as resting on the AFRs' "hopes" or "subjective intent." Appellant's Br. 21-22. Appellant ends his quotation of the Recognition Opinion at "provide evidence of" and supplies his own characterization, "the JPLs' subjective intent." Appellant's

Br. 22. The Recognition Opinion actually states that the BVI Originating Applications and the BVI AG's Skeleton Argument "provide evidence of that purpose"—liquidation. [JA-6614]. The Court properly considered those materials to identify the relief the proceedings seek, not the subjective intent of the BVI AG or the AFRs. *See Betcorp*, 400 B.R. at 284–85 (considering the statutory process, the initiating documents, and the liquidator's declaration to determine the proceeding's liquidation purpose). Appellant's attempt to discount the applications because they preceded the AFRs' appointment also ignores the statutory sequence. Appellant's Br. 22. Those applications expressly sought the AFRs' appointment as liquidators, and BVI law requires a liquidation application to be pending before provisional liquidators may be appointed. [JA-3781 ¶ 1; JA-898 § 170(1)].

Finally, Appellant's reliance on the absence of alleged insolvency adds a requirement the U.S. Bankruptcy Code does not impose. Appellant's Br. 19. Section 101(23) of the U.S. Bankruptcy Code requires a law relating to insolvency or adjustment of debt and a proceeding for reorganization or liquidation. It does not require the debtor itself to be insolvent. *In re Millard*, 501 B.R. 644, 649-50 (Bankr. S.D.N.Y. 2013) (explaining that the "nature of the proceeding," rather than the U.S. court's view of the debtor's condition, "governs the inquiry"); *see also Betcorp*, 400 B.R. at 281–82. Nor does the asserted absence of debts to restructure or functions

resembling a reorganization negate a liquidation purpose: section 101(23) requires reorganization ***or*** liquidation. Appellant's Br. 19-20.

**2. The BVI Proceedings Are Collective.**

Appellant confuses the absence of an operating claims process during provisional liquidation with an absence of collectivity. Appellant's Br. 23-24. Collectivity requires consideration of all creditors' rights and obligations for their general benefit, assessed in light of the governing law and the particular proceeding, including the orders governing it. *See Ashapura*, 480 B.R. at 136-37. The originating applications, BVI Orders and incorporated Protocol, and statutory framework establish that collective creditor focus here. The applications seek to "ensure that any recovered assets are properly distributed as part of a collective process" and contemplate pursuing claims for the benefit of victims and creditors. [JA-3790 ¶ 31(j)–(k)].

Creditor duties and procedural safeguards already apply. The Protocol requires the AFRs, including during the provisional stage, to "remain independent and act in the interests of the [Debtors'] creditors as a whole" and preserves stakeholders' ability to form a creditors' committee, whose views the AFRs must consider equally with those of the BVI AG's committee. [JA-161–62 §§ 2, 4]. The BVI Orders reinforce that collective framework by restraining actions against each Debtor pending further order of the BVI Court, protecting against piecemeal

enforcement. [JA-159 ¶ 11]. The Act also permits any person aggrieved by a provisional liquidator's act, omission, or decision to seek judicial relief from the BVI Court. [JA-942 §§ 272(1), 273].

The inquiry also encompasses the contemplated claims process: *Ashapura* expressly looks to the "consideration and eventual treatment" of claims and the "possibility" of creditor participation. 480 B.R. at 136. If final liquidators are appointed, the BVI Insolvency Act provides for notice, creditors' meetings subject to specified exceptions, submission and determination of claims, and distributions according to statutory priorities with ordinary admitted claims sharing ratably if assets are insufficient. [JA-902–13 §§ 178(1), 179(1), 183, 207(1)–(2), 209].

Section 101(23)'s inclusion of an "interim proceeding" confirms that recognition need not await the claims and distribution procedures of final liquidation. 11 U.S.C. § 101(23). In *Comair*, the court found a provisional liquidation collective because all creditor claims would be adjudicated and treated under the governing statutes, citing the creditors' meeting and lodging of claims that would follow a final liquidation order. *In re Comair Ltd.*, 2023 WL 1971618, at *15 (Bankr. S.D.N.Y. Feb. 12, 2023). The same sequence applies here if final liquidation is approved by the BVI Court.

Appellant's assertion that no formal notice has issued to a creditor body is misplaced for the same reason. Appellant's Br. 23. *See British Am.*, 425 B.R. at 903 (finding collectivity before formal claims solicitation, where creditors could be heard, tendered claims were accepted, and required notice to general unsecured creditors would follow at winding up); *see also Ashapura*, 480 B.R. at 137 & n.45 (explaining that the notice standard is "not a demanding one"). The BVI Act requires advertisement of the pending liquidation applications unless the BVI Court orders otherwise. [JA-896 § 165]. The liquidation applications were publicly advertised in several jurisdictions, including through notices concerning all thirty Debtors in the Hong Kong Gazette.

Appellant's "no known creditors" assertion is false and does not negate collectivity. Appellant's Br. 23. For instance, Pretlove testified that he was aware of utility and other property-related creditors of one of the Debtors and confirmed the utility claims matched its records. [JA 4110:11-16, 4119:5-18]. He also testified that he had already received and recorded claims from two alleged fraud victims, which he had not yet adjudicated. [JA-4110:17–4111:12]. Appellant's own Objection discussed "two claimants who had allegedly come forward," while questioning which Debtors their claims concerned. [JA5268-69 ¶ 38]. The alleged transnational crimes may require further investigation to identify claimants and determine their claims against particular Debtors. Collectivity concerns

consideration and eventual treatment of creditors' claims, not identification of every claimant during provisional liquidation. *See Ashapura*, 480 B.R. at 136. Nor does asserted solvency establish an absence of creditors: admitted claims must be paid before any surplus is distributed to members. [JA-912 § 207(1), (3)].

The BVI AG's involvement does not make these proceedings "functionally bilateral." Appellant's Br. 23. BVI law authorizes her to seek liquidation, but she claims no proprietary interest in the assets and cannot direct the AFRs, who must act in the interests of creditors collectively. [JA-894 § 162(2)(f); JA-1088 ¶ 69; JA-161 § 2].

*Global Cord* does not help Appellant. There, the proponents relied on general corporate benefit, while creditors lacked standing to participate and any process for identifying or determining their claims. 2022 WL 17478530, at *7–9. Here, the AFRs' duties to creditors, along with the ability of interested parties to seek judicial intervention, protect creditor interests. Those protections support the Bankruptcy Court's express "goal of benefiting all who may have claims against the estate." [JA-6614].

### B. The Bankruptcy Court Correctly Held That Each Debtor's Interest in the S&C Retainer Satisfies Section 109(a).

Section 109(a) of the Bankruptcy Code requires a foreign debtor with no U.S. residence, domicile, or place of business to have property in the United States to be eligible for chapter 15. 11 U.S.C. § 109(a); *Barnet*, 737 F.3d at 247.

The requirement sets an "extremely low bar," *In re B.C.I. Fins. Pty Ltd.*, 671 B.R. 669, 676 (Bankr. S.D.N.Y. 2025), and a debtor's interest in an undrawn attorney retainer satisfies it, *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372–74 (Bankr. S.D.N.Y. 2014). That low bar accords with Chapter 15's broader purpose of promoting international cooperation to protect creditors and preserve assets for orderly administration across borders. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 132 (2d Cir. 2013).

In that context, the United States' interest in these liquidations cannot be measured by the balance in a retainer account. Here, the alleged fraud harmed U.S. victims, Chen Zhi faces federal prosecution, and U.S. authorities have seized approximately 127,271 Bitcoin. [JA-68–70 ¶¶ 20, 22, 24]. The AFRs are investigating the Debtors' potential claims to those assets. [JA-4094:6–4095:17]. U.S. assistance to the BVI liquidations thus serves concrete domestic interests as well as the cross-border cooperation Congress intended.

Consistent with that low threshold, the Bankruptcy Court found that S&C held in its New York client trust account a $25,000 retainer in which "each Debtor possesses a ratable interest." [JA-6612]. That finding is well supported by the record.

### 1. Appellant Identifies No Clear Error in the Bankruptcy Court's Findings Concerning the Retainer Arrangement.

Mixed questions receive clear-error review when resolving them requires primarily factual work. *Lakeridge*, 583 U.S. at 396. Whether S&C held the retainer ratably for the Debtors turned on the particular arrangement: the capacity in which Pretlove acted, the entities for which he established the retainer, and the terms on which S&C held it. Resolving those matters required weighing evidence and drawing transaction-specific inferences, not developing legal principles. The Bankruptcy Court's findings concerning that arrangement therefore warrant clear-error review. *See Gasson* v. *Premier Capital, LLC*, 43 F.4th 37, 41–43 (2d Cir. 2022) (affirming a beneficial-ownership finding based on the debtor's control of the business).

The record supports the Bankruptcy Court's determination. S&C's invoice documents the $25,000 retainer, and the Verified Petition identifies the New York client trust account and each Debtor's ratable interest. [JA-5005; JA-37 ¶ 16]. It is undisputed that Interpath transferred the funds to S&C before the chapter 15 petitions were filed. [JA-4176:13–4177:19; JA-4247:3–4248:2; JA-6722:24–6723:1]. And Pretlove testified that as provisional liquidator for all thirty Debtors, he arranged S&C's retention, requested that Interpath make the payment in that representative capacity, and understood the funds to be held ratably on the Debtors'

behalf. [JA-4181:18–4182:10; JA-4249:19–4250:10; JA-4188:23–4189:4]. The Bankruptcy Court found that "each Debtor possesses a ratable interest" in the retainer. [JA-6612].

Appellant's emphasis on Interpath's payment and the AFRs' status as S&C's clients does not contradict that arrangement. Both facts were before the Bankruptcy Court, and neither establishes that S&C held the funds exclusively for Interpath or the AFRs rather than ratably for the Debtors. The Bankruptcy Court was entitled to credit the evidence that the retainer was established and held for the Debtors. At most, Appellant urges a different inference from the same evidence. But "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

Appellant nevertheless relies on *In re Hernandez* for the proposition that "[w]hether something constitutes an interest of a debtor in property" is a legal question reviewed *de novo*. Appellant's Br. 47 (citing 483 B.R. 713, 719 (B.A.P. 9th Cir. 2012)). But that out-of-circuit decision predates *Lakeridge* and addressed the legal effect of California execution and exemption statutes on funds subjected to a creditor's levy, while treating as undisputed the underlying finding that the funds consisted almost entirely of Social Security benefits. *Hernandez*, 483 B.R. at 720–25. *Hernandez* therefore does not address the standard governing the mixed question here: whether the particular retainer arrangement gave each Debtor a ratable interest.

Under *Lakeridge*, resolving that fact-intensive question warrants clear-error review. 583 U.S. at 396. The governing legal requirements remain subject to *de novo* review. *Id*. In any event, the record establishes an interest sufficient under section 109(a) even if this Court reviews that ultimate issue *de novo*, for the reasons below.

Finally, Appellant gains nothing from isolating the Bankruptcy Court's statement that the retainer "appears to satisfy" § 109(a). Appellant's Br. 46; [JA-6613]. The Bankruptcy Court found that each Debtor possesses a ratable interest in the retainer. [JA-6612]. And the Recognition Order eliminated any possible ambiguity by expressly determining that "[e]ach of the Debtors has property located in the United States." [JA-6765 ¶ 2].

#### 2. S&C's Representation of the AFRs Does Not Affect the Debtors' Interests in the Retainer.

Appellant's argument rests on a false premise: that funds in a lawyer's trust account can belong only to the lawyer's clients. He asserts that "[f]unds held in S&C's client trust accounts belong to S&C's clients" and "do not belong to a third party." Appellant's Br. 47. New York's Rules of Professional Conduct expressly contemplate otherwise. Rule 1.15 recognizes that funds held by a lawyer may belong to a "client or third person" and requires the lawyer to safeguard and account *for those interests*. N.Y. Rules of Pro. Conduct R. 1.15(b)(4), (c)(1)-(4). Identifying S&C's client therefore does not establish who has an interest in the funds S&C holds.

Chapter 15 decisions in this District confirm that distinction. In *Vneshprombank*, Blank Rome represented Russia's Deposit Insurance Agency in its capacity as the debtor bank's foreign representative. Blank Rome nevertheless held a security retainer "on behalf of the Bank," which the court held constituted property sufficient to satisfy section 109(a). *In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 171–72 (Bankr. S.D.N.Y. 2019). *Octaviar* and *Berau* likewise recognized qualifying debtor property in retainers held by foreign representatives' counsel. *Octaviar*, 511 B.R. at 372–74; *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).

Nor can Appellant avoid those authorities by labeling the AFRs "adverse to the Debtors" because their provisional liquidator appointments have been challenged in the BVI Court. Appellant's Br. 48. The BVI Orders expressly authorize the AFRs to seek foreign recognition to secure and realize company assets, conduct litigation in the companies' names, and retain counsel to discharge their duties. *See e.g.*, [JA-172 ¶ 3(c), (d), (h)].

**3. Neither Interpath's Funding Nor Possible Reimbursement Removes the Debtors' Interests in the Retainer.**

Appellant argues that because Interpath, the AFRs' advisory firm, supplied the $25,000 used to fund the S&C Retainer, "the funds belong to Interpath, not the Debtors." Appellant's Br. 46. That argument confuses the source of the

funds with the interests created by the retainer arrangement. Section 109(a) asks whether the Debtors possess a property interest in the United States, not whether they supplied the funds used to create that interest. *Global Ocean* squarely rejected the inference Appellant draws, explaining that "it is not relevant who paid the retainer" where the funds were paid on behalf of the debtors. *In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 39 (Bankr. D. Del. 2000). *JPA No. 111* likewise held that it was "of no moment" that the debtors' non-debtor parent transferred the retainer funds directly to counsel; the debtors possessed qualifying property interests "whoever sent the funds to counsel." *In re JPA No. 111 Co., Ltd.*, 2022 WL 298428, at *5-6 (Bankr. S.D.N.Y. Feb. 1, 2022).

Appellant's assertion that the AFRs could not explain how the Debtors acquired interests in the retainer also disregards the evidence. Appellant's Br. 48. Pretlove testified that, acting as provisional liquidator for all thirty Debtors, he arranged S&C's retention and requested that Interpath fund the retainer. He further testified that he understood S&C to hold the resulting retainer ratably on the Debtors' behalf. [JA-4181:18–4182:10; JA-4188:23–4189:4; JA-4249:19–4250:10]; *see also* [JA-37 ¶ 16]. Taken together, that evidence supports the finding that each Debtor held a present beneficial interest in the undrawn fund established to meet liquidation expenses, distinct from Interpath's claim for reimbursement from later estate recoveries. [JA-4178:4–20; JA-4187:12–22; JA-4188:23–4189:4].

Nor does Pretlove's refusal to characterize Interpath's payment as a gift or loan negate the Debtors' interests in the retainer. [JA-4249:7–18]. Neither characterization was necessary for S&C to hold funds on the Debtors' behalf. Appellant's related contention that the transaction created only a contingent liability, "not an asset," is also wrong. Appellant's Br. 48–49. A single transaction can create both a property interest in one party and a contingent liability of that party to another. *See, e.g.*, *In re Bally Total Fitness of Greater N.Y., Inc.*, 2009 WL 1116587, at *3–4 (Bankr. S.D.N.Y. Mar. 27, 2009) (holding that funds advanced by an insurer were property of the debtor even though the insurer held a contingent claim for repayment), *aff'd*, 2009 WL 1684022 (S.D.N.Y. June 15, 2009).

## III. THE BANKRUPTCY COURT PROPERLY TAILORED AND GRANTED DISCRETIONARY RELIEF

Section 1521 of the Bankruptcy Code authorizes "any appropriate relief," subject to section 1522's requirement that affected interests remain sufficiently protected. 11 U.S.C. §§ 1521(a), 1522(a). Where section 1521 independently authorizes relief, section 1507(b) imposes no additional prerequisite. *See In re Rede Energia S.A.*, 515 B.R. 69, 93–95 & nn.45–46 (Bankr. S.D.N.Y. 2014). The Bankruptcy Court properly exercised that broad discretion by addressing Appellant's objections and tailoring the relief accordingly. [JA-6757–63].

### A. Paragraph 19 Properly Authorizes Discovery and Orders No Turnover of Foreign Assets.

Paragraph 19 authorizes discovery concerning the Debtors' assets and affairs, preserving objections to particular requests. [JA-6768 ¶ 19]. Congress expressly authorized that assistance in section 1521(a)(4). 11 U.S.C. § 1521(a)(4). The AFRs sought discovery to trace assets and investigate the Debtors' affairs and potential claims in the United States. [JA-37 ¶ 12]. The Bankruptcy Court found cause for that discovery and held the authorization "reasonable and in compliance with" section 1521(a)(4). [JA-6760]. Appellant's attempt to portray discovery as a response to his objections ignores that independent basis. Appellant's Br. 43; [JA-6760–61].

Appellant's "jurisdictional" objection attacks relief Paragraph 19 does not grant. He challenges the provision "[t]o the extent" it authorizes turnover of foreign property as discovery. Appellant's Br. 27–28. It orders no such turnover. The foreign-document provision concerns documents within the possession, custody, or control of persons subject to the Bankruptcy Court's jurisdiction. *See In re Three Arrows Cap., Ltd.*, 647 B.R. 440, 452 n.4 (Bankr. S.D.N.Y. 2022). Paragraph 19 permits the AFRs to *seek* turnover through a separate motion or adversary proceeding, while Paragraph 18 limits entrusted administration and realization to property within U.S. territory. [JA-6768]. Any turnover request therefore remains subject to separate statutory and jurisdictional review. This

preserves the distinction between discovery and turnover recognized in Appellant's authority. *See In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 682 & n.8 (S.D.N.Y. 2011).

Appellant likewise rewrites Paragraph 19 when he says it authorizes discovery "without further review by the court." Appellant's Br. 36. The Order permits *service of discovery* "without further order of this Court," but expressly preserves "the recipient's or any other party-in-interest's rights to object in accordance with applicable law and procedural rules." [JA-6768 ¶ 19]. Dispensing with advance approval to serve discovery does not eliminate judicial review. At the provisional stage, the Bankruptcy Court found discovery necessary to preserve assets and no significant harm to recipients, who could seek judicial relief. [JA-3216–17]. Tellingly, Appellant himself requested and was authorized in another chapter 15 case to issue subpoenas "without further order of this Court," subject to recipients' rights to object. *In re KG Manhattan 126 Fin. Ltd.*, No. 21-11080 (MEW), Recognition Order ¶¶ E, 6 (Bankr. S.D.N.Y. July 14, 2021), ECF No. 11.

In *Platinum Partners*, the court authorized discovery at recognition and later resolved the auditor's objections on a motion to compel. *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 807–09 (Bankr. S.D.N.Y. 2018). The necessity determination Appellant cites concerned *enforcement*, not service, of the disputed subpoena. *Id.* at 812; Appellant's Br. 37. Nor does the later subpoena

to his counsel warrant reversal of the general authorization. Paragraph 19 preserves objections and adjudicates none of that subpoena's disputed terms. [JA-6768 ¶ 19]; Appellant's Br. 37 n.10.

### B. Paragraph 20 Properly Gives Domestic Effect to the BVI Court Orders.

Paragraph 20 gives the BVI Proceedings and orders entered before recognition "full force and effect in the United States." [JA-6768 ¶ 20].[5] Section 1521(a) authorizes that relief, subject to section 1522's sufficient-protection requirement. *See Rede Energia*, 515 B.R. at 92–94.[6] Comity supports enforcement where the foreign proceedings are procedurally fair and do not contravene U.S. law or public policy.[7] *JP Morgan Chase Bank* v. *Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005).

The Bankruptcy Court applied that standard. It explained that the initial *ex parte* appointments did not undermine the proceedings' fairness and noted the Borrelli Debtors' participation in BVI hearings. [JA-6616]. The appointments had continued on an *inter partes* basis and remained subject to applications to vary or

---

[5] Appellant's assertion that discretionary relief was sought only after briefing ignores the original petition and proposed order, which expressly requested and supported domestic enforcement. Appellant's Br. 31; [JA-45–47 ¶¶ 41–46; JA-60 ¶ 19]. His own Objection challenged that request. [JA-5275 ¶ 57; JA-5279 ¶ 66].

[6] Courts in this District have likewise granted domestic effect to foreign proceedings and "all prior orders" entered in them. *See In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM), Recognition Order ¶ 5 (Bankr. S.D.N.Y. Nov. 20, 2025), ECF No. 39.

[7] "[T]he relief granted in a foreign proceeding and the relief available in the United States do not need to be identical." *Rede Energia*, 515 B.R. at 91.

discharge them. [JA-47 ¶ 46]. The Court expressly determined that comity supported domestic enforcement. [JA-6766 ¶ 10]. *Collins*, Appellant's own authority, follows the same approach: it separately considered enforcement after recognition and enforced the foreign orders after reviewing procedural fairness and U.S. public policy. *Collins* v. *Oilsands Quest Inc.*, 484 B.R. 593, 596–97 (S.D.N.Y. 2012); Appellant's Br. 35.

The sealed May 29 order presents, at most, a discrete enforcement issue. Appellant's Br. 35. Any affected party may ask the Bankruptcy Court to determine whether further approval is required before that order may be enforced in the United States. [JA-6770 ¶ 28]. That issue does not justify disturbing recognition or enforcement of orders reviewed below.

### C. Paragraph 21 Properly Bars Unauthorized Acts on the Debtors' Behalf.

#### 1. Paragraph 21 Prevents Confusion About Whom a Party Represents While Preserving Independent Claims.

Paragraph 21 restricts acts "in the name or on behalf of" the Debtors and their controlled subsidiaries without prior authorization from the AFRs, the Bankruptcy Court, or the BVI Court, and expressly excludes the BVI Proceedings. [JA-6769 ¶ 21]. It does not stay creditors' claims against non-Debtor subsidiaries or their property. Appellant nevertheless invokes the standard for staying claims *against* non-debtors to attack a restraint on acting *for* them without the authorization

Paragraph 21 requires. Appellant's Br. 25; *In re ARD Fin., S.A.*, 678 B.R. 711, 733 (Bankr. S.D.N.Y. 2026).

The similar-names clause prevents parties from obscuring whom they represent. As the Supplemental Opinion recounts, the AFRs reported that Appellant's counsel sought to appear under "Prince Group" or derivative trade names used by the Debtors without identifying its client. [JA-6752–53]. Paragraph 21 addresses that ambiguity by reaching a similar designation only if it "does not clearly refer to a specific legal entity or natural person." [JA-6769 ¶ 21]. The Bankruptcy Court removed four enumerated Prince Group names from Paragraph 21's ambit to preserve other entities' independent claims, including in the EDNY forfeiture proceeding. [JA-6762–63]. A similar name alone triggers no restriction. Anyone acting for an entity that is neither a Debtor nor a controlled subsidiary can avoid the restriction simply by identifying the entity represented.

**2. Chapter 15 Authorizes Relief Protecting the AFRs' Recognized Authority.**

Section 1521(a) authorizes "any appropriate relief" necessary to protect debtor assets or creditor interests, including injunctions against interference with recognized foreign proceedings. *See In re Olinda Star Ltd.*, 614 B.R. 28, 46–48

(Bankr. S.D.N.Y. 2020).[8] Chapter 15 provides courts with "broad, flexible rules to fashion relief appropriate for effectuating its objectives in accordance with comity." *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1053 (5th Cir. 2012). Section 105(a), in turn, permits orders implementing that authority. The AFRs invoked both sections 105(a) and 1521(a) in their June 12 letter (the "June 12 Letter"), explaining that competing assertions of corporate authority could obstruct their investigation of the Debtors' affairs and preservation of assets. [JA-6884–86]. Paragraph 21 restrains that conduct, and the Recognition Order invokes both provisions. [JA-6766 ¶ 9; JA-6769 ¶ 21].[9]

Appellant argues that Paragraph 21 exceeds the Bankruptcy Court's jurisdiction "to the extent it applies 'outside the United States.'" Appellant's Br. 26. His authorities do not establish a categorical bar on relief affecting conduct abroad. *JSC BTA Bank* recognized that a proceeding affecting U.S. debtor property could be stayed pursuant to section 1520(a)(1) "[r]egardless of its venue in another country."

8 *See also In re Archetype Invs. Fund SPC Ltd.*, No. 19-11996 (SHL), Recognition Order ¶ 2(2) (Bankr. S.D.N.Y. July 23, 2019), ECF No. 10 (enjoining acts to exercise control over a BVI debtor or its liquidators).

9 Alternatively, section 1507 supports this limited assistance. Paragraph 21 guards against asset diversion by protecting administration by independent fiduciaries obligated to act for creditors as a whole [JA-161, -3215–16]. It preserves independent claims and judicial recourse without directing distributions or changing priorities. [JA-6762–63]. The Bankruptcy Court also assessed the proceedings' fairness and determined that contemplated distributions were broadly consistent with U.S. law. [JA-6615–16]. Those protections support relief under section 1507(b)(1)–(4). *See Rede Energia*, 515 B.R. at 95 & n.46, 103.

*In re JSC BTA Bank*, 434 B.R. 334, 339–43, 348 (Bankr. S.D.N.Y. 2010); 11 U.S.C. § 1520(a)(1).

*Fairfield Sentry*'s statement that proceedings "are territorial and are not designed to have extraterritorial effect" arose in an analysis of claims seeking recovery of foreign assets. 458 B.R. at 680; Appellant's Br. 26. The court expressly distinguished relief against assets from "discovery, stays, and the like" when explaining why asset location mattered. *Fairfield Sentry*, 458 B.R. at 680. Paragraph 21 does not concern recovery of assets. [JA-6769 ¶ 21]. It protects the AFRs' recognized authority against competing acts of representation by persons subject to the Bankruptcy Court's jurisdiction. [JA-6769 ¶ 21]. Here, the Bankruptcy Court found provisional relief necessary to protect U.S. assets and resolve uncertainty over the Debtors' representation in ongoing discussions and litigation with U.S. governmental entities. [JA-3213].

Appellant's hypothetical Hong Kong appointment supplies no basis to eliminate Paragraph 21. Appellant's Br. 25–26. If an appointment creates a concrete conflict, either the Bankruptcy Court or the BVI Court may authorize the affected conduct, and the Bankruptcy Court may modify the restraint. [JA-6769; JA-6770 ¶¶ 21, 28]; 11 U.S.C. § 1522(c). Any necessary limitation should address that conflict, leaving the remaining protection intact.

### 3. Appellant's Injunction Argument Misreads Section 1521(e) and the Record.

Section 1521(e) applies injunction standards to relief under subsections (a)(1), (2), (3), and (6). *See* 11 U.S.C. § 1521. The enumeration does not extend to every form of relief under section 1521(a); to the extent this Court finds that section 1521(e) nevertheless applies to paragraph 21, the record satisfies the applicable requirements, as explained below. *Nortel* applied the statute to litigation restraints under subsections (a)(1) and (2), not to every form of relief authorized by section 1521. *In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704–05 (Bankr. D. Del. 2015); Appellant's Br. 33–34.[10]

Even if traditional injunction requirements apply, the Court's findings and the record support the restraint. Under the standard Appellant invokes, the relevant considerations are likelihood of success on the merits, irreparable harm, the balance of hardships, and the public interest. Appellant's Br. 34; *Nortel*, 538 B.R. at 704–05.

*First*, the AFRs had already established the authority Paragraph 21 protects. The Bankruptcy Court recognized their authority to represent the Debtors, and the BVI Court confirmed that directors could not cause the Debtors to oppose

---

10 *Olinda Star* applied section 1521(e) to an anti-interference injunction that included preventing enforcement of an accelerated guaranty against the debtor in New York. 614 B.R. at 47–48. It did not address whether that subsection governs relief outside the categories Congress enumerated. *Id*.

foreign recognition or interfere with the AFRs' powers. [JA-156 ¶¶ 1–2; JA-6766 ¶ 8; JA-6767–68 ¶¶ 14–17].

*Second*, competing representation threatened asset preservation. The Petition described competing director appointments and threatened U.S. litigation challenging the AFRs' authority, while the June 12 Letter explained how unidentified claims to represent "Prince Group" could confuse counterparties holding Debtor property. [JA-47–48 ¶¶ 48–51; JA-6885–86 & n.3]. The Bankruptcy Court found a substantial risk of dissipation, difficulty tracing concealed assets, and a danger that assets would disappear without intervention. [JA-3215–16]. At recognition, it further found evidence of interference by Chen Zhi and his allies and that delay would permit further obfuscation. [JA-6618].

*Third*, the Bankruptcy Court balanced the harms by narrowing the restraint to preserve independent claims, including in the EDNY forfeiture proceeding, and challenges in the BVI Proceedings. [JA-6762–63]. It expressly found that the relief's benefits outweighed the resulting hardship. [JA-6766 ¶ 9].

*Finally*, Paragraph 21 serves the public interest by protecting orderly administration of assets for creditors collectively. The Bankruptcy Court identified equitable treatment of creditors and cross-border cooperation as grounds for provisional relief [JA-3216–17]. It also observed that the BVI Proceedings appeared

to advance U.S. public-policy interests by assisting regulatory investigations of Chen Zhi's alleged criminal organization. [JA-6616].

### D. The Bankruptcy Court Protected the Interests Affected by Its Relief.

#### 1. The Bankruptcy Court Performed the Required Balancing.

The Supplemental Opinion refutes Appellant's claim that sufficient protection received only one sentence. Appellant's Br. 32. The Bankruptcy Court withheld entry of the Recognition Order to resolve Appellant's objections, then tailored the relief: it preserved discovery objections, subjected asset sales to section 363, and narrowed Paragraph 21 to protect independent claims and challenges in the BVI Proceedings. [JA-6751; JA-6757–63]. His assertion that no BVI distribution law was submitted is equally incorrect: the Chissick Declaration attached the BVI Insolvency Act, including its distribution provisions. Appellant's Br. 32 n.8; [JA-759–60 ¶¶ 9, 12].

The Second Circuit has rejected demands for more specific findings where the findings and record provide a "clear understanding" of the decision's basis and permit effective appellate review. *In re D.H. Overmyer Co.*, 510 F.2d 329, 333 (2d Cir. 1975).[11] In *Qimonda I,* the challenged modification exposed licensees to termination of existing patent licenses and demands for new royalties. *In re*

---

[11] In reviewing factual findings for clear error, the Court considers the entire record, not merely the evidence cited in the opinion. *CBI Holding Co*., 529 F.3d at 449.

*Qimonda AG Bankr. Litig.*, 433 B.R. 547, 558 (E.D. Va. 2010) [hereinafter *Qimonda I*]. Yet the bankruptcy court did not explain why preserving those licenses would impair the patent portfolio's value or adequately consider the risk to licensees' existing investments. *Id.* at 557-58. Here, the Bankruptcy Court explained why the challenged relief was needed and changed its terms to address affected interests.

**2. Appellant's Own Objection Refutes His Claim That Fees Escape Review.**

Appellant claims there is "no opportunity" to challenge whether the AFRs' work was necessary. Appellant's Br. 37-38. Yet he acknowledged BVI Court review and approval and stated that the Borrelli Debtors "fully intend to contest any applications for fees in the BVI." [JA-5277 n.15].

The BVI Court must consider whether remuneration is fair and reasonable, time was properly spent, duties were effectively performed, and expenses were properly incurred. [JA-899 § 172(1); JA-1015 §§ 432(5)(a)(i), (ii), (iv), (vii)]. Interim payments remain subject to court approval, and disallowed amounts must be repaid within seven days. *See, e.g.*, [JA-158 ¶ 3(k)]. Paragraph 20 preserves those conditions [JA-6768 ¶ 20]; *see, e.g.*, [JA-158–59 ¶¶ 3(k), 8].

Appellant invokes *Treco* to challenge the Court's consideration of liquidation costs. Appellant's Br. 37–38. But *Treco* involved a concrete threat to a creditor's recovery: foreign liquidators sought turnover of assets subject to an asserted secured claim, although liquidation expenses had already consumed most

recoveries and apparently were paid without creditor notice or judicial approval. *Treco*, 240 F.3d at 159–61. Here, the challenged provisions approve no particular charge, and interim payments remain subject to BVI Court approval and repayment of disallowed amounts. *See, e.g.*, [JA-158 ¶ 3(k)]. The Court also explained the need for relief and tailored it to protect affected interests. [JA-6757–63].

### E. Any Correction Should Preserve Recognition and the Order's Unaffected Provisions.

Any defect in a discretionary provision would not itself justify reversing recognition. Recognition is mandatory when section 1517's requirements are met, subject to section 1506; additional relief under section 1521 is discretionary. 11 U.S.C. §§ 1517(a), 1521(a). *Qimonda I* illustrates that distinction: the court remanded the challenged modification of discretionary relief without reversing recognition. 433 B.R. at 552–54, 571.

## IV. APPELLANT IDENTIFIES NO MANIFEST CONFLICT WITH U.S. PUBLIC POLICY

Section 1506 permits refusal of recognition or related relief only when it would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Under the framework Appellant invokes, he must establish either fundamental procedural unfairness in the foreign proceedings or that recognition or related relief would severely impinge the value and import of a U.S. constitutional or statutory right. *Qimonda I*, 433 B.R. at 568–70; Appellant's Br. 38–46. Appellant

bears the burden to show that section 1506 applies. *Ashapura*, 480 B.R. at 144. Neither ordinary differences in procedure nor disagreement with the relief granted satisfies that "exacting standard." *ARD Fin.*, 678 B.R. at 737; *see also Fairfield Sentry*, 714 F.3d at 139–40.

Appellant's new fee-disclosure theory is waived. He never asked the Bankruptcy Court to deny recognition because the BVI Proceedings impaired protections supplied by 11 U.S.C. §§ 328–330. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008); *Allianz Ins. Co.* v. *Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). His arguments also fail on the merits.

**A. The Record Refutes Appellant's Claim of Fundamental Procedural Unfairness.**

**1. The BVI Court Heard the Borrelli Debtors' Objections and Expressly Stated That It Would Not Rely on Undisclosed Evidence.**

An initial *ex parte* appointment does not establish a denial of due process. The relevant question is whether meaningful review is available. Appellant's own authority recognizes that *ex parte* relief is permissible when notice and an opportunity to appear and defend promptly follow. *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 116 (Bankr. S.D.N.Y. 2012); *In re OAS S.A.*, 533 B.R. 83, 103-05 (Bankr. S.D.N.Y. 2015) (finding due process satisfied because *ex parte* proceedings and orders were subject to *ex post* review). The Borrelli Debtors appeared through counsel in the BVI Court, filed objections, and presented them at

the April 16–17 *inter partes* hearing in that court. [JA-5259–60 ¶¶ 15–17]. The Bankruptcy Court expressly relied on that participation in rejecting Appellant's fairness challenge. [JA-6616].

Sealed filings likewise do not establish fundamental unfairness. *Fairfield Sentry* rejected that argument concerning BVI liquidation proceedings, recognizing that U.S. courts also restrict public access. 714 F.3d at 139–40. The BVI Court answered the Borrelli Debtors' concern about deciding the liquidation applications on undisclosed material: "The Judge cannot take secret evidence into account. That is a fundamental rule of justice." [JA-3741:14–16]. It explained that it would disregard new material or obtain further submissions before deciding the applications. [JA-3739:22–3742:9].

#### 2. The AFRs' Positions Were Not "Gamesmanship," and the Bankruptcy Court Considered Appellant's Objections.

Appellant's account refutes his claim that the AFRs improperly sought to bar lawful opposition. Appellant's Br. 42–43. As Appellant's Objection acknowledged, the AFRs did not oppose directors' participation "to the extent permissible under US law." [JA-5265 ¶ 31]. Requiring Appellant to establish standing honored that qualification. Nor did the AFRs abandon their appointment challenge: the BVI Court adjourned it *sine die* with liberty to restore. [JA-6846 ¶ 3].

Appellant also claims that the Bankruptcy Court denied him due process by treating his objections as improper "interference" and using them to justify discovery. Appellant's Br. 43. But the Court considered his objections and granted several, including narrowing Paragraph 21 to preserve independent claims and challenges in the BVI Proceedings. [JA-6762–63]. Although it cited evidence of interference, the Court separately found cause for discovery into the Debtors' assets and affairs and expressly preserved recipients' rights to challenge particular requests. [JA-6760–61].

Appellant's claim that the AFRs misrepresented their request as limited solely to recognition (with no associated relief) fails on the face of the proposed order shown to the BVI Court. Appellant's Br. 40–42. His quotation omits the BVI Court's immediate qualification, "or at least that's part of it," and counsel's clarification that "[t]here are different elements to it clearly." [JA-4516:12–18]. That order sought authority to administer or realize U.S. assets and enforce the BVI Orders domestically. [JA-60 ¶¶ 18–19]. It also expressly reserved requests for additional relief. [JA-60 ¶ 20]. The later discovery and injunction requests were openly presented, contested, and narrowed after judicial review in the Bankruptcy Court. [JA-6751; 6757–63]. Seeking additional relief through that process establishes no deception.

Appellant's broader complaint that the AFRs obtained relief unavailable from either jurisdiction alone mistakes the purpose of Chapter 15. Appellant's Br. 42–43. Congress expressly authorized U.S. assistance supplementing foreign proceedings, subject to U.S. statutory protections. 11 U.S.C. §§ 1521–1522. The Bankruptcy Court applied those protections here.

### B. The BVI Fee Oversight Process and the BVI AG's Initiation of the Proceedings Do Not Violate Any Fundamental U.S. Policy.

#### 1. The AFRs' Fees Are Subject to Judicial Determination.

Appellant did not present his fee-transparency theory to the Bankruptcy Court as a basis for applying section 1506. The public-policy section of his corrected objection invoked only procedural unfairness, [JA-5273–75 ¶¶ 52–55], and his limited objection did not assert that the BVI fee-review process was manifestly contrary to U.S. public policy. [JA-6635–46 ¶¶ 1–28]. This theory is therefore waived. *Allianz*, 416 F.3d at 114.

The theory also fails on the merits. Appellant invokes sections 328–330 to insist on U.S.-style public billing disclosures, but section 1506 does not require foreign procedures to duplicate their U.S. counterparts. Appellant's Br. 45; *Fairfield Sentry*, 714 F.3d at 139–40. His demand for aggregate or category totals likewise does not establish a fundamental defect in the BVI process. The AFRs' discovery responses that Appellant cites objected to discovery at recognition on

relevance, proportionality, and other grounds; they do not establish that the BVI fee-review process forecloses a meaningful challenge. [JA-4698–99]. As explained above, BVI law requires judicial determination of whether remuneration is fair and reasonable, time was properly spent, and expenses were properly incurred. [JA-899 § 172(1); JA-1015 § 432(5)(a)]. Interim payments remain subject to approval, and disallowed amounts must be repaid within seven days. [*See, e.g.*, JA-157–58 ¶ 3(k)]. Appellant expressly acknowledged that the Borrelli Debtors "fully intend to contest any applications for fees in the BVI." [JA-5277 n.15]. Different disclosure procedures do not establish that those protections severely impinge a fundamental U.S. right.[12]

**2. Appellant's Section 303 Theory Misapplies Domestic Filing Requirements.**

Appellant now invokes section 303's restrictions on involuntary petitions to support the general objection he raised below that governments cannot nationalize companies or force them into Chapter 11 because their affiliates were indicted. [JA-5250]; Appellant's Br. 45–46. Even assuming that objection preserved his section 303 theory (and it did not), the theory fails on the merits.

Section 303 governs commencement of domestic involuntary bankruptcy cases, while Chapter 15 governs recognition of foreign proceedings. 11

12 As explained above, *Treco* involved turnover threatening a secured recovery through expenses apparently paid without creditor notice or judicial approval. 240 F.3d at 159–61. Appellant identifies no comparable impairment here.

U.S.C. §§ 303, 1501 *et seq.* Congress did not condition recognition on compliance with section 303, and a foreign proceeding does not become manifestly contrary to U.S. public policy merely because the party authorized to initiate it could not file an involuntary petition here. The bankruptcy court in *Gerova* accordingly rejected a public-policy objection based on Bermuda law's permitting winding up on a single creditor's petition, although U.S. law generally requires three petitioning creditors. *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 95–96 (Bankr. S.D.N.Y. 2012).

Nor are these proceedings a nationalization. Appellant's Br. 42, 45. The BVI AG does not assert any proprietary interest in the Debtors' assets. [JA-1088 ¶ 69]. The Protocol requires the AFRs to remain independent and act for creditors collectively; the BVI AG's role is consultative, with no power to direct them. [JA-11–15 §§ 2, 15]. Court-supervised liquidation by independent fiduciaries does not transfer the companies or their assets to the government.[13]

Recognition advances Chapter 15's objectives of cross-border cooperation, fair administration, and asset protection. 11 U.S.C. § 1501(a)(1), (3)–(4). The Bankruptcy Court accordingly observed that these proceedings "appear to advance U.S. public policy interests." [JA-6616].

---

13 The BVI judge's questions quoted at Appellant's Br. 46 reflect scrutiny of the pending liquidation applications. He expressly required an independent inquiry into the evidence and described the provisional appointments as temporary measures. [JA-3856:25–3857:16; JA-3862:10–13]. Those exchanges do not establish that final liquidation was ordered without an evidentiary basis.

## CONCLUSION

The Court should dismiss the appeal for lack of bankruptcy appellate standing or, if it reaches the merits, affirm the Recognition Order.

Dated: October 2, 2026
New York, New York

Respectfully submitted,

*/s/ Andrew G. Dietderich*

Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
levinsc@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com
kranzleya@sullcrom.com

*Counsel to the Authorized Foreign Representatives*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h) and S.D.N.Y. Local Civil Rule 7.1(d), Andrew G. Dietderich hereby certifies that the foregoing document complies with the typeface requirements set forth in Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-volume limitation set forth in Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i). This brief has been prepared in a proportionally spaced typeface in Times New Roman and 14-point font and complies with the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6). Excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g), this brief contains 12,310 words.

Dated: October 2, 2026
New York, New York

Respectfully submitted,

*/s/ Andrew G. Dietderich*

Andrew G. Dietderich
Sharon Cohen Levin
Christopher J. Dunne
Jacob M. Croke
Alexa J. Kranzley
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
Email: dietdericha@sullcrom.com
levinsc@sullcrom.com
dunnec@sullcrom.com
crokej@sullcrom.com
kranzleya@sullcrom.com

*Counsel to the Authorized Foreign Representatives*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, I caused true and correct copies of the foregoing *Brief of Appellees Paul Pretlove, David Standish, and James Drury in Their Capacities as Authorized Foreign Representatives of Prince Global Holdings Limited et al.* to be served on counsel of record via the Court's electronic filing system.

*/s/ Andrew G. Dietderich*
Andrew G. Dietderich